UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

ZAAPPAAZ LLC, also d/b/a Wrist-Band.com,
WBpromotion.com, CustomLanyard.net, and WB
Promotions; and

AZIM MAKANOJIYA, individually and as an
officer of ZAAPPAAZ LLC,

     Defendants.

**Civil Matter No. _____**

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint
alleges:

1.     The FTC brings this action under Sections 13(b) and 19 of the Federal Trade
Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; and the Mail, Internet, or Telephone
Order Merchandise Rule ("MITOR"), 16 C.F.R. Part 435, to obtain temporary, preliminary, and
permanent injunctive relief, restitution, rescission or reformation of contracts, the refund of
money or return of property, the payment of damages, disgorgement of ill-gotten monies, and
other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC
Act, 15 U.S.C. § 45(a), and in violation of MITOR, 16 C.F.R. Part 435.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## **PLAINTIFF**

4.      The FTC is an independent agency of the United States Government created by statute.   15 U.S.C. §§ 41–58.   The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces MITOR, 16 C.F.R. Part 435, which requires mail-, Internet-, or phone-based sellers to have a reasonable basis for advertised shipping times, and, when sellers cannot meet promised shipping times or ship within 30 days, to provide buyers with the option to consent to a delay in shipping or to cancel their orders and receive a prompt refund.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and MITOR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.   15 U.S.C. §§ 53(b), 57b; 16 C.F.R. Part 435.

## DEFENDANTS

6.      Defendant Zaappaaz LLC ("Zaappaaz"), also doing business as Wrist-Band.com, WBpromotion.com, CustomLanyard.net, and WB Promotions, is a Texas corporation with its principal place of business at 35 Cadence Court, Richmond, Texas, 77469.   Zaappaaz transacts or has transacted business in this District and throughout the United States.   At all times material to this Complaint, acting alone or in concert with others, Zaappaaz has advertised, marketed, distributed, or sold merchandise to consumers throughout the United States.

7.      Defendant Azim Makanojiya is the founder, president, and a director of Zaappaaz, a company he created in 2008.   In 2017, Mr. Makanojiya pled guilty, individually and on behalf of Zaappaaz, to charges of price fixing brought by the Department of Justice's antitrust criminal division.   At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Zaappaaz, including the acts and practices set forth in this Complaint.   Defendant Makanojiya resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

## COMMERCE

8.      At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### Overview

9.      Seeking to capitalize on demand for personal protective equipment ("PPE") because of the COVID-19 pandemic, Defendants began marketing facemasks, face shields, gloves, and other merchandise advertised as PPE through their website in March 2020. Defendants promised consumers the PPE was "in stock" and would ship the same day, and offered guaranteed delivery dates, with higher shipping costs for faster delivery.

10.      Defendants' same-day shipping promises and guaranteed delivery dates were, in many cases, false.   In fact, Defendants frequently waited weeks to ship products and failed to inform consumers of the delay.   "Guaranteed" delivery dates passed without delivery of purchased goods, and Defendants ignored persistent consumer questions and refund demands.

### Defendants' Shipping Practices

11.      Zaappaaz markets and sells consumer goods, including customized merchandise such as wristbands, lanyards, keychains, can coolers, and various PPE, to consumers throughout the United States and internationally.

12.      Zaappaaz sells these goods through its websites, www.Wrist-Band.com, WBpromotion.com, and CustomLanyard.net.

13.      During the early months of the pandemic in the United States, obtaining PPE and related products as quickly as possible was paramount for many consumers.   PPE was in high demand and difficult to find.

14.      In response, Zaappaaz began selling PPE, claiming its products were in stock and shipped the same day as the order.   At the same time, Zaappaaz also began offering consumers guaranteed delivery dates, allowing consumers to pay for faster delivery.

4

15. Zaappaaz clearly and conspicuously displays these shipping, delivery, and in-stock guarantees across multiple product pages.

16. For example, Zaappaaz tells consumers that its 1 Gallon Liquid Sanitizer is "IN STOCK," "GUARANTEED TO SHIP TODAY," and offers the option to select the desired guaranteed delivery date.



Ex. A (June 1, 2020, wrist-band.com website).

17. Similarly, Zaappaaz represents that it has face shields and no contact infrared thermometers "IN STOCK" and available to "SHIP[] SAME DAY."





Exs. B & C (June 1, 2020, wrist-band.com website).

18.     Zaappaaz tells consumers its facemasks are "GUARANTEED TO SHIP TODAY" and it has "20,000+ in Stock."   Zaappaaz offers more than one option for delivery date, with different shipping prices depending on the shipping speed.   For example, this $2.99 face mask (when buying at least 10 masks) has a shipping charge of $5.34 per mask for the merchandise to arrive the next day.



Ex. D (June 1, 2020, wrist-band.com website).

19.     After selecting a desired delivery date, that date is described as "Guaranteed."



Ex. E (June 1, 2020, wrist-band.com website).

20.     Similarly, Zaappaaz tells consumers that its vinyl disposable gloves are "GUARANTEED TO SHIP TODAY" and it has "20,000+ in Stock."   They guarantee next day delivery for $14.48 per piece, for a product that costs $14.99 for one box.



Ex. F (June 1, 2020, wrist-band.com website).

8

21.     In numerous instances, Zaappaaz failed to ship purchased goods the same day, and failed to meet guaranteed delivery dates.

22.     For example, two Zaappaaz consumers, on April 1, 2020, spent $4,776.73 on facemasks, goggles, and face shields for their daughter, a nurse who has an underlying medical condition and works in a hospital.   They paid over $400 for two-day shipping.   Yet, they did not receive their order on the guaranteed delivery date.   After the date passed, the consumers asked to cancel the order, but were told that PPE orders are non-refundable and non-returnable.

23.     Another consumer ordered infrared thermometers on April 7, 2020, with guaranteed delivery two days later.   When the Defendants failed to deliver the order on the guaranteed date, the consumer asked that his order be cancelled, but his request was denied. Despite the failure to deliver his order, Zaappaaz sent this consumer an email advertising the same product he had ordered as in stock and ready to ship.

24.     In numerous instances, Zaappaaz promised consumers that they would receive full or prorated refunds of their shipping costs when their orders did not arrive on the guaranteed delivery dates.

25.     For example, one consumer purchased ten face shields on April 5, 2020, for $232.81.   The order total included a $52.91 shipping fee with a delivery date of April 7, 2020. When the order did not arrive as promised, the consumer asked to cancel her order, but was told it was non-refundable.   After multiple communications with wrist-band.com, they offered to refund the rush shipping charge once the consumer received her package.   As of July 24, 2020, the consumer was still waiting for her promised refund.

26.     Zaappaaz received dozens of complaints regarding its shipping delays and failures via emails, phone calls, and chat messages through its websites.   Zaappaaz responded to some of these messages, continuing to tell consumers that their orders would ship soon, and refunds were not available on PPE products.

27.     Meanwhile, Zaappaaz continued to advertise its PPE products as in stock and available to ship same day, when it knew the products would not ship in the promised time.

28.     Wrist-Band.com desktop webpages, including pages explaining the refund policy and advertising PPE products, announce a 100% money back guarantee in a banner at the bottom of webpages.



Ex. G (May 29, 2020, wrist-band.com website).

29.     The mobile website promises "Satisfaction Guaranteed" to consumers in their shopping carts when they start the checkout process.



Ex. H (June 1, 2020, wrist-band.com mobile website).

30.     As of at least June 1, 2020, Wrist-Band.com has stated on its desktop webpages that PPE is non-returnable and non-refundable.   This disclaimer appears on the PPE product pages below the photos of the product.   In order to view this disclaimer on the Wrist-Band.com

mobile website, the user must click a "Click Here to View Details" button below the product images.

31.     Wrist-Band.com continues to display the 100% money back guarantee on multiple desktop webpages, including the PPE webpage.

32.     In numerous instances, Zaappaaz offered its same day shipping policy for its advertised PPE goods, without having a reasonable basis for this claim.

33.     In numerous instances, Zaappaaz did not ship one or more pieces of ordered merchandise within the time represented by its shipping guarantees.

34.     In numerous instances, when Zaappaaz failed to ship one or more pieces of ordered merchandise within the time represented by its shipping guarantees, Zaappaaz did not offer consumers the opportunity to consent to a delay in shipping or to cancel their orders and receive refunds.

35.     In numerous instances, when Zaappaaz failed to ship one or more pieces of ordered merchandise within the time represented by its shipping guarantees, it also failed to offer consumers the required opportunity to either consent to a delay in shipping or to cancel their orders and receive refunds.   Zaappaaz did not deem the orders cancelled nor issue refunds.

36.     In numerous instances, when Zaappaaz failed to ship one or more pieces of ordered merchandise within the time represented by its shipping guarantees, consumers demanded cancellation and prompt refunds, despite having not been informed of this option. Even in these cases, Zaappaaz did not cancel orders or provide prompt refunds to consumers.

37.     Dozens of consumers have complained directly to Zaappaaz, the Better Business Bureau ("BBB"), and the FTC, particularly during the initial months of the COVID-19 pandemic, that Zaappaaz breached its stated policies.

**Zaappaaz's Defective, Inferior, or Incorrect Products**

38.     Zaappaaz advertises, markets, solicits orders for, and sells a range of consumer goods it describes as PPE.   Zaappaaz provides images of these products and represents certain information about them.

39.     In many cases, Zaappaaz's descriptions and images do not match the products they ultimately deliver to consumers; instead, in numerous instances, consumers receive defective or inferior products.

40.     For example, one consumer paid $579.20 for five automatic hand sanitizer dispensers for business use during the COVID-19 pandemic.   The wrist-band.com website advertised that the dispensers worked with any type of hand sanitizer (liquid, gel, or foam).   The delivered products, however, did not dispense liquid or gel hand sanitizer.   The consumer asked for a refund, but was told all sales were final and the consumer would need to purchase new nozzles, for $25 each, for the dispensers to work.

41.     In some instances, consumers receive goods, but Defendants do not deliver the products consumers ordered; rather, the orders are incomplete or incorrect.

42.     For example, on April 7, 2020, a consumer ordered a number of products, including no touch thermometers and disposable gloves, to protect the safety and welfare of employees at a food manufacturer.   The consumer purchased the products because of the guaranteed four-day shipping for her order, but Defendants failed to deliver for almost two months.   When her order finally arrived, it was incomplete and missing a thermometer.

43.     Numerous consumers complained directly to Zaappaaz, the FTC, and the BBB that the goods they received were defective, inferior, or incorrect.

**Defendant Makanojiya**

44.     At all times material to this Complaint, acting alone or in concert with others, Defendant Makanojiya controlled all aspects of Zaappaaz LLC, including directly participating in Zaappaaz's practices alleged above and receiving consumer complaints.

45.     Defendant Makanojiya was Zaappaaz's point of contact for interactions with the BBB.   Because of this position, Defendant Makanojiya received the complaints that consumers filed with the BBB.

46.     Defendant Makanojiya knew, or should have known, that Zaappaaz's claims of same day shipping, in many instances, and especially during the COVID-19 pandemic, were false or unsubstantiated and made without a reasonable basis.

47.     Additionally, Defendant Makanojiya knew, or should have known, that defective, inferior, or incorrect goods were being delivered to consumers.

48.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things, they have consistently touted their same day shipping and guaranteed delivery date promises, notwithstanding consistent known failures to honor these guarantees, and because they deliver defective, inferior, or incorrect products.

### VIOLATIONS OF THE MAIL, INTERNET, OR TELEPHONE ORDER MERCHANDISE RULE

49.     MITOR, 16 C.F.R. Part 435, prohibits sellers from soliciting any order for the sale of merchandise ordered through the mail, via Internet or by telephone "unless at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer" either "[w]ithin that time clearly and conspicuously stated in any such

solicitation; or [i]f no time is clearly and conspicuously stated, within 30 days after receipt of a properly completed order from the buyer."   16 C.F.R. § 435.2(a)(1).

50.     "Receipt of a properly completed order" means "where the buyer tenders full or partial payment . . . the time at which the seller receives both said payment and an order from the buyer containing all of the information needed by the seller to process and ship the order."   16 C.F.R. § 435.1(c).

51.     "Shipment" means the act of physically placing the merchandise in the possession of a carrier.   16 C.F.R. § 435.1(e).

52.     Where a seller is unable to ship merchandise within the seller's advertised time or within 30 days if no time is given, the seller must offer to the buyer "clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund."   16 C.F.R. § 435.2(b)(1).

> a)     Any such offer "shall be made within a reasonable time after the seller first becomes aware of its inability to ship."   16 C.F.R. § 435.2(b)(1).
>
> b)     The offer must fully inform the buyer of the buyer's right to cancel and provide a definite revised shipping date or inform the buyer that the seller cannot make any representation regarding the length of the delay.   16 C.F.R. § 435.2(b)(1)(i).

53.     A seller must "deem an order canceled and . . . make a prompt refund to the buyer whenever the seller receives, prior to the time of shipment, notification from the buyer cancelling the order pursuant to any option [under MITOR] . . . [or] [t]he seller fails to offer the option [to consent to a delay or cancel required by § 435.2(b)(1)] and has not shipped the merchandise" within the time required by MITOR.   16 C.F.R. § 435.2(c), (c)(1), and (c)(5).

14

54.     Pursuant to Section 18 of the FTC Act, 15 U.S.C. § 57a(d)(3), and 16 C.F.R. § 435.2, a violation of MITOR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count I – MITOR Violations

55.     In numerous instances, when Defendants:

a)      represent they will ship purchased goods the same day, they do not have a reasonable basis to expect to ship the goods the same business day;

b)      fail to ship orders within the timeframe required by MITOR, they also fail to offer consumers the opportunity to consent to a delay in shipping or to cancel their order and receive a prompt refund;

c)      fail to ship orders within the timeframe required by MITOR and fail to offer consumers the opportunity to consent to a delay in shipping or to cancel their order, they do not cancel those orders or provide consumers a prompt refund;

d)      receive cancellation and refund requests from consumers pursuant to any option under MITOR, they do not deem those orders cancelled or provide a prompt refund.

56.     Defendants' practices as alleged in Paragraph 55 violate MITOR, 16 C.F.R. § 435.2(a), (b), and (c), and therefore are unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

### VIOLATIONS OF THE FTC ACT

57.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

58.     Misrepresentations or deceptive omissions of material fact constitute deceptive

acts or practices prohibited by Section 5(a) of the FTC Act.

## Count II – Section 5 Violations

59.     In numerous instances in connection with the advertising, marketing, promotion,

offering for sale, or sale of goods, specifically PPE and related products, Defendants have

represented, directly or indirectly, expressly or by implication, that they:

a)      will ship goods the same day they are purchased;

b)      will deliver by a guaranteed date(s);

c)      have multiple items in stock and ready to ship;

d)      will refund the full or prorated cost of shipping when orders do not arrive

on time;

e)      deliver the goods consumers order; and

f)      provide a 100% Money Back Guarantee for their goods.

60.     In truth and in fact, in numerous instances in which Defendants have made the

representations set forth in Paragraph 59, Defendants:

a)      failed to ship goods the same day they were purchased;

b)      failed to deliver purchased goods by the guaranteed delivery date;

c)      do not have sufficient goods in stock to make shipments as advertised;

d)      failed to refund shipping costs as promised;

e)      delivered defective, inferior, or incorrect goods; or

f)      refused to refund consumers' money, despite requests to do so.

61.     Therefore, Defendants' representations set forth in Paragraph 59 are false, misleading, or unsubstantiated, and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

62.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and MITOR.   In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.   Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

63.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.   The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

64.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and MITOR, 16 C.F.R. Part 435, authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of MITOR, including the rescission or reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, MITOR, 16 C.F.R. Part 435, and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions;

B.      Enter a permanent injunction to prevent future violations of the FTC Act and MITOR by Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and MITOR, including restitution, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.


Respectfully submitted,

Alden F. Abbott
General Counsel


Dated:   August 4, 2020                     /s Michelle Schaefer
                                            MICHELLE SCHAEFER, Attorney-in-Charge, *pro hac vice pending*
                                            ANNE COLLESANO, *pro hac vice pending*
                                            600 Pennsylvania Avenue, NW, CC-9528

18

Washington, DC 20580
(202) 326-3515; mschaefer@ftc.gov
(202) 326-2485; acollesano@ftc.gov

James E. Elliott, Assistant Regional Director
Texas Bar # 06557100
S.D. Texas #14
Federal Trade Commission
Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9373; jelliott@ftc.gov
(214) 979-9350 (main office)
(214) 953-3079 (fax)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION