UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

ZAAPPAAZ LLC, also d/b/a Wrist-Band.com, WBpromotion.com, CustomLanyard.net, and WB Promotions; and

AZIM MAKANOJIYA, individually and as an officer of ZAAPPAAZ LLC,

      Defendants.

Civil Action No. 4:20-cv-2717

## DEFENDANTS' ANSWER TO COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF, AFFIRMATIVE DEFENSES AND JURY DEMAND

      Defendants Zaappaaz LLC and Azim Makanojiya file through undersigned counsel, pursuant to Rule 8 of Federal Rules of Civil Procedure, this Answer, Affirmative Defenses, and Jury Demand in response to the Complaint for Permanent Injunction and Other Relief (Doc. 1) filed by Plaintiff hereinafter referred to as the "Complaint." Defendants deny the allegations in the Complaint unless specifically admitted. Defendants deny any allegations for which there is no specific response. Defendants deny all title headings, footnotes, subheadings, and other material not set forth in numbered paragraphs.

### Responses to Numbered Paragraphs

1.      This paragraph does not require an admission or denial.

2.      Defendants admit Plaintiff's jurisdictional allegations.

1

3.      Defendants admit Plaintiff's venue allegations.

4.      This paragraph does not require an admission or denial.

5.      This paragraph does not require an admission or denial.

6.      Defendants admit the allegations in this paragraph.

7.      Defendants object to admitting or denying the immaterial and scandalous allegation contained in this paragraph regarding an unrelated antitrust case and ask the Court to strike that allegation.  Defendants admit Azim Makanojiya is the founder and president of Zaappaaz and that the company was created in 2008.  Defendants admit Makanojiya has formulated, directed, controlled, had the authority to control, or participated in various acts and practices of Zaappaaz. Defendants deny Makanojiya did so with respect to "the acts and practices set forth in [Plaintiff's] Complaint."  Makanojiya denies he has "transacted business" with respect to matters relevant to this lawsuit in his individual capacity.

8.      Defendants deny that Makanojiya individually "maintained a substantial course of trade in or affecting commerce" as alleged in paragraph 8 of Plaintiff's Complaint.

9.      Makanojiya denies the allegations in this paragraph in his individual capacity. Zaappaaz admits it offered for sale facemasks, face shields, gloves, and other merchandise described as PPE in March 2020.  Zaappaaz denies it did so solely to "capitalize on demand."  Zaappaaz admits it described certain specific PPE items as "in stock" and ready for same day shipment. Zaappaaz admits that, for a period of time and based on its long-term experience (of over 13 years) with e-commerce and expertise in shipping goods, Zaappaaz stated on its order pages that delivery was guaranteed on a date certain.  Zaappaaz denies it continues to guarantee delivery on a date certain.  In fact, on April 12, 2020, Zaappaaz emailed its customers advising of potential delays, apologizing for miscommunications, and acknowledging logistical strains.

Zaappaaz placed the same notice on its website on April 12, 2020:

## We're Here for You

To Our Great Customers,

As we continue to navigate the rapidly evolving COVID-19 situation, our first thought is for the safety and well-being of all individuals and businesses impacted by these difficult circumstances. In these unprecedented times, it is important that we come together to support all those impacted. At Wrist-Band, we are committed to providing you with all required products and resources you need so that you can focus on your well-being and your loved ones. We want to assure you we will do everything in our power to continue to serve our customers and support our communities.

We would would like to reassure you that we are fully committed to supporting you. We are extremely thankful for your trust and patience with us during these tough times. We are working 24 hours a day, 7 days a week to answer your questions and deliver your orders on time. However, we sincerely apologize for any potential miscommunications or delays in delivery. Although most orders are arriving on time, some customers may face delays. We are challenged with receiving imported products in on time due to logistical strains to meet the significant, unanticipated demand. We hope you can understand due to the pandemic, we are constrained on workforce and resources. However, we are extremely grateful for your business and support and we will do everything in our power to make sure you are satisfied with your experience with us. We will be restocked with full inventory this week to fulfill all incoming orders, as well as remaining orders that need to be shipped.

We kindly request for you to be patient with us as we are trying our upmost best to ship as fast as possible. As soon as we are receiving goods we are deploying them to you. Our goal is to get our products in your hands as soon as possible.

We wish nothing but the best for you and hope you remain safe. Please contact us if you have any questions or concerns. We will continue to be available 24 hours a day, 7 days a week to serve you.

Sincerely,
**WRIST-BAND TEAM**

Zaappaaz admits that it engaged in standard and non-deceptive industry practice of charging customers more for faster delivery.

10.     Makanojiya denies the allegations in this paragraph in his individual capacity. Zaappaaz denies its same-day shipping statements were, "in many cases," false.  Zaappaaz denies it frequently waited weeks to ship products and failed to inform consumers of the delay.  Zaappaaz admits that, in a small number of cases compared to total orders, purchased goods were not delivered

3

on the date stated on the order page (mainly in April 2020 because of COVID-19's effect on global shipping).   Zaappaaz denies it ignored persistent consumer questions and refund demands. Zaappaaz denies it continues to guarantee delivery on a date certain.   In fact, on April 12, 2020, Zaappaaz emailed its customers advising of potential delays, apologizing for miscommunications, and acknowledging logistical strains.   Zaappaaz placed the same notice on its website on April 12, 2020.

11.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.   Zaappaaz admits the allegations in this paragraph.

12.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.   Zaappaaz admits the allegations in this paragraph.

13.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.   Zaappaaz admits the allegations in this paragraph.

14.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.   Zaappaaz admits it began selling PPE in late March of 2020 and that it stated on its order pages that certain PPE products were in stock and would ship the same day.   Zaappaaz admits that it engaged in standard and non-deceptive industry practice of charging customers more for faster delivery.

15.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.   Zaappaaz admits it displays shipping and in-stock statements (but denies they amount to "guarantees") and that for a time Zaappaaz described delivery dates as dates certain.   Zaappaaz denies it continues to describe delivery dates as dates certain.   Zaappaaz now estimates delivery dates and has added a notice to customers of possible delivery delays because of COVID-19.

16.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz

4

responds.  Zaappaaz admits that on June 1, 2020, Zaappaaz offered 1 Gallon Liquid Sanitizer for sale, that it stated on its order page the product was "in stock" and that the product would ship the same day with delivery on  a date certain.  Zaappaaz denies that it continues to describe delivery dates as "guaranteed."

17.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that on June 1, 2020, Zaappaaz offered face shields and no contact infrared thermometers for sale, that it stated on its order page the products were "in stock" and that the products would ship the same day with delivery on a date certain. Zaappaaz denies that it continues to provide "guaranteed" delivery dates.

18.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that on June 1, 2020, Zaappaaz offered certain facemasks for sale, that it stated on its order page the product was "in stock" and that the product would ship the same day with delivery on a date certain.  Zaappaaz denies that it continues to describe delivery dates as "guaranteed."

19.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that on June 1, 2020, Zaappaaz described certain delivery dates as "guaranteed."  Zaappaaz denies that it continues to describe delivery dates as "guaranteed."

20.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that on June 1, 2020, Zaappaaz offered certain vinyl gloves for sale, that it stated on its order page the product was "in stock" and that the product would ship the same day with delivery on a date certain.  Zaappaaz denies that it continues to describe delivery dates as "guaranteed."

21.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz

responds.  Zaappaaz denies that in "numerous" instances, Zaappaaz failed to ship purchased goods the same day and failed to meet delivery dates.  Zaappaaz admits that, in a small number of instances when compared to total orders, certain goods did not ship the same day and were not delivered on the date certain described on certain order pages.  Zaappaaz attributes these shipping and delivery issues to Chinese customs and shipping changes that occurred on or about April 6, 2020, when China changed its export rules on PPE.[1]  This overnight change resulted in dramatic shipment and delivery issues that took time to digest, comprehend, and apply to delivery date estimations.  As Zaappaaz gained clarity on the overnight change in rules, it adjusted its delivery guidance to customers.

22.    This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that order number 220479901 was placed under two different names on April 1, 2020 for 500 KN95 facemasks, 10 goggles, and 10 face shields.  Zaappaaz admits the customers selected two-day shipping.  Zaappaaz admits the customers paid over $400 for 2-day shipping.  Zaappaaz admits that, based on their misunderstandings, some of Zaappaaz' front-line customer service agents told Zaappaaz customers in April that PPE orders were not subject to refund or exchange.  Those customer service agents did not differentiate between customers requesting refunds on delivered orders as opposed to customers requesting refunds because of delivery issues.  Zaappaaz' policy was always to issue refunds to customers who did not want to wait for orders that would be delivered late and regrets that incorrect information was given to some customers.  Zaappaaz denies the orders were *not* canceled, as Zaappaaz itself canceled the orders.  Zaappaaz denies the customers did not receive a refund.

23.    This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz

---

[1]   *See* https://reut.rs/2Etl6Fj .

responds.  Zaappaaz admits order number 220490908 was placed on April 7, 2020 for infrared thermometers and that the delivery date was described as two days later.  Zaappaaz denies the order was never delivered.  Zaappaaz admits the customer asked for his order to be cancelled.  Zaappaaz admits that, based on their misunderstandings, some of Zaappaaz' front-line customer service agents told Zaappaaz customers in April that PPE orders were not subject to refund or exchange.  Those customer service agents did not differentiate between customers requesting refunds on delivered orders as opposed to customers requesting refunds because of delivery issues.  Zaappaaz' policy was always to issue refunds to customers who did not want to wait for orders that would be delivered late and regrets that incorrect information was given to some customers.  Zaappaaz denies it ultimately denied the customer's request.  Zaappaaz admits it sent this customer an email advertising the same product he had ordered as in stock and ready to ship.

24.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits it offered refunds on shipping fees for potential late deliveries.

25.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits order number 220485458 was placed on April 5, 2020 for 10 face shields for a total of $232.81 including $52.91 in shipping charges.  Zaappaaz admits the customer initially requested a refund and admits a front-line customer service agent told the customer the order was non-refundable.  Zaappaaz admits that, based on their misunderstandings, some of Zaappaaz' customer service agents told Zaappaaz customers in April that PPE orders were not subject to refund or exchange.  Those customer service agents did not differentiate between customers requesting refunds on delivered orders as opposed to customers requesting refunds because of delivery issues.  Zaappaaz' policy was always to issue refunds to customers who did not want to wait for orders that would be delivered late and regrets that incorrect information was given

to some customers.  This customer ultimately decided to keep the order, which was delivered on April 28, 2020.  Zaappaaz admits it offered to refund shipping charges to this customer.  Zaappaaz attempted to process the refund through the customer's chosen payment method (Amazon). However, Zaappaaz was unable to timely process the refund because of actions Amazon had taken.

26.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that in processing over 500 orders per day, less than 1% of its customers made complaints regarding shipping delays and/or failures and admits this figure may be in the dozens out of over 90,000 orders.  Zaappaaz admits that, based on their misunderstandings, some of Zaappaaz' front-line customer service agents told Zaappaaz customers in April that PPE orders were not subject to refund or exchange.  Those customer service agents did not differentiate between customers requesting refunds on delivered orders as opposed to customers requesting refunds because of delivery issues.  Zaappaaz' policy was always to issue refunds to customers who did not want to wait for orders that would be delivered late and regrets that incorrect information was given to some customers.  Zaappaaz gave clarity to customers on when their orders would arrive and admits it truthfully told some customers their orders would ship "soon."  Zaappaaz issued many refunds in April 2020 to customers who did not want to wait for their orders.

27.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that during the time period relevant to this lawsuit, it advertised PPE products as in stock and ready to ship the same day.  Zaappaaz denies it knowingly advertised products as in stock and ready to ship when they were not.  When it became apparent that worldwide supply chain issues affected delivery dates, Zaappaaz placed a prominent notice on its website regarding potential delays.

28.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that on June 1, 2020 its desktop webpages included a statement regarding its general refund policies and stated in a banner on the lower part of the homepage that there was a general 100% money back guarantee on its products.  However, Zaappaaz prominently notified customers of exceptions to these policies on its PPE listing pages, stating PPE products were not eligible for refund or exchange.  Zaappaaz denies it continues to state "100% money back guarantee" on any of its websites.

29.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that on June 1, 2020 its mobile website stated, "Satisfaction Guaranteed."  Zaappaaz also placed a notice on all PPE product listing pages that there was no refund or exchange for any PPE products.  Zaappaaz denies it continues to state "Satisfaction Guaranteed" on any of its websites.

30.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that it has and continues to state on its PPE product listing pages that PPE is non-returnable and non-refundable.  Zaappaaz denies this policy can only be seen by clicking "view details" below the product.

31.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz denies its websites continue to state "100% money back guarantee."

32.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz denies it did not have a reasonable basis to offer same day shipping on its PPE products.

33.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that, in a limited number of circumstances as compared to total orders,

certain PPE orders were not delivered on time and regrets that worldwide supply chain and logistical issues beyond Zaappaaz' control caused delays.  Zaappaaz shipped or attempted to ship all orders on the dates it represented it would ship orders and thus denies the remainder of the allegations in this paragraph.

34.    This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that, in a limited number of circumstances as compared to total orders, certain PPE orders were not delivered on time and regrets that worldwide supply chain and logistical issues beyond Zaappaaz' control caused delays.  Zaappaaz shipped or attempted to ship all orders on the dates it represented it would ship orders.  Zaappaaz denies it has not offered refunds to customers who have not consented to shipping delays

35.    This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that, in a limited number of circumstances as compared to total orders, certain PPE orders were not delivered on time and regrets that worldwide supply chain and logistical issues beyond Zaappaaz' control caused delays.  Zaappaaz shipped or attempted to ship all orders on the dates it represented it would ship orders.  Zaappaaz denies it has not offered refunds to customers who have not consented to delivery delays.

36.    This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that, in a limited number of circumstances as compared to total orders, certain PPE orders were not delivered on time and regrets that worldwide supply chain and logistical issues beyond Zaappaaz' control caused delays.  Zaappaaz shipped or attempted to ship all orders on the dates it represented it would ship orders.  Zaappaaz denies it has not offered refunds to customers who have not consented to shipping delays.  Zaappaaz admits its customer service agents stated Zaappaaz' general no-refund and no-return policy on PPE to customers, and regrets that some

customers were not timely notified that Zaappaaz would indeed refund orders that were not fulfilled on time.  To the best of its knowledge, Zaappaaz has by now issued refunds to all customers who were entitled to refunds.

37.     Defendants admit that consumers have complained that Zaappaaz breached its stated policies.  Zaappaaz is without sufficient information to admit or deny allegations about complaints made to the FTC.

38.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits the allegations in this paragraph.

39.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz denies the allegations in this paragraph.

40.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits order number 220536291 was placed on June 2, 2020 for delivery on June 19, 2020.  Zaappaaz delivered the order 8 days early, on June 11, 2020.  Zaappaaz admits the customer raised a complaint about the product.  Zaappaaz asked the customer to follow its protocol of raising a Support Ticket, but the customer never did so.  Zaappaaz denies the remaining allegations in this paragraph.

41.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits that its agents and employees are human beings and are thus not perfect; to the extent mistakes were made with any of the over 90,000 orders Zaappaaz has processed, Zaappaaz always attempted to correct the mistakes.  Zaappaaz admits some mistakes were made in processing over 90,000 orders causing incomplete or incorrect order fulfillment.  Zaappaaz also admits that some customers had orders lost, damaged, or stolen in transit.  FedEx, for example, made multiple claims of losing or damaging Zaappaaz shipments, including delivery to incorrect

addresses.

42.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz admits order number 220490908 was placed on April 7, 2020 for 2 disposable gloves and 3 no contact thermometers.  Zaappaaz denies the order was delivered "two months" late. The order was delivered on May 13, 2020.  Zaappaaz regrets that due to worldwide supply chain and logistical issues outside its control, the order was not delivered on the date described on the order page.

43.     This paragraph's allegations relate only to Zaappaaz and therefore only Zaappaaz responds.  Zaappaaz is without sufficient information to quantify complaints made to the FTC. Zaappaaz denies it received "numerous" complaints as compared to total orders processed. Zaappaaz admits some customers made complaints to Zaappaaz and the BBB.

44.     This paragraph's allegations relate only to Makanojiya and therefore only Makanojiya responds.  Makanojiya denies he controlled "all" aspects of Zaappaaz and denies participating in every practice described in Plaintiff's complaint.  Makanojiya admits being made aware of certain consumer complaints, but denies those complaints were immediately routed to him.

45.     This paragraph's allegations relate only to Makanojiya and therefore only Makanojiya responds.  Makanojiya denies he was the initial "point of contact" with the BBB but admits he interacted with the BBB regarding complaints made to the BBB about Zaappaaz.

46.     This paragraph's allegations relate only to Makanojiya and therefore only Makanojiya responds.  Makanojiya denies the allegations in this paragraph.

47.     This paragraph's allegations relate only to Makanojiya and therefore only Makanojiya responds.  Makanojiya denies the allegations in this paragraph.

48.     Defendants are without sufficient information to admit or deny allegations about

what the FTC believes.  Defendants deny that, as of the date of this Answer, the FTC has reason to believe Defendants are violating or are about to violate laws enforced by the FTC.  Zaappaaz denies it touted policies in the face of "consistent known failures" to honor policies.  Zaappaaz denies it delivers, as a matter of course, "defective, inferior, or incorrect" products.

49.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

50.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

51.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

52.     This paragraph and its sub-parts do not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

53.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

54.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

55.     This paragraph and its sub-parts do not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

56.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.  Defendants deny they are liable under MITOR.

57.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.

58.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.

59.     This paragraph and its sub-parts do not require an admission or denial. To the extent an admission or denial is deemed required, deny.

60.     This paragraph and its sub-parts do not require an admission or denial. To the extent an admission or denial is deemed required, deny.

61.     This paragraph and its sub-parts do not require an admission or denial. To the extent an admission or denial is deemed required, deny.

62.     Defendants deny the allegations in this paragraph.

63.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.

64.     This paragraph does not require an admission or denial. To the extent an admission or denial is deemed required, deny.

## AFFIRMATIVE DEFENSES

65.     Defendants had a reasonable basis to expect they would be able to ship any ordered merchandise within the time clearly and conspicuously stated in any of Zaappaaz's solicitations. 16 C.F.R. § 435.2(a)(1)(i).

66.     Defendants had a reasonable basis for Zaappaaz making any representations regarding any definite revised shipping dates. 16 C.F.R. § 435.2(a)(2).

67.     Defendants had a reasonable basis for Zaappaaz informing any buyers that it was unable to make any representation regarding the length of any delay and informed buyers of the reasons for any delay. 16 C.F.R. § 435.2(a)(3).

68.     Where Zaappaaz was unable to ship merchandise within the applicable time as set forth in 16 C.F.R. § 435.2(a)(1), Defendants offered buyers, clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund. Said offers were made within a reasonable time after Defendants first became aware of Zaappaaz's inability to ship within the applicable time, but in no event later than said applicable time. 16 C.F.R. § 435.2(b)(1).

     a.  Any offer to the buyer of such an option fully informed the buyer regarding the buyer's right to cancel the order and to obtain a prompt refund and provided a definite revised shipping date, but where Zaappaaz lacked a reasonable basis for providing a definite revised shipping date the notice informed the buyer that Zaappaaz was unable to make any representation regarding the length of the delay.

     b.  Where Zaappaaz provided a definite revised shipping date which was thirty (30) days or less later than the applicable time, the offer of said option expressly informed the buyer that, unless the Zaappaaz received, prior to shipment and prior to the expiration of the definite revised shipping date, a response from the buyer rejecting the delay and cancelling the order, the buyer would be deemed to have consented to a delayed shipment on or before the definite revised shipping date.

     c.  Where Zaappaaz provided a definite revised shipping date which was more than thirty (30) days later than the applicable time or where Zaappaaz was unable to provide a definite revised shipping date and therefore informs the buyer that it was unable to make any representation regarding the length of the delay, the offer

of said option also expressly informed the buyer that the buyer's order would automatically be deemed to have been cancelled unless:

    i. Zaappaaz shipped the merchandise within thirty (30) days of the applicable time, and has received no cancellation prior to shipment; or

    ii. Zaappaaz received from the buyer within thirty (30) days of said applicable time, a response specifically consenting to said shipping delay. Where Zaappaaz informed the buyer that it was unable to make any representation regarding the length of the delay, the buyer was expressly informed that, should the buyer consent to an indefinite delay, the buyer would have a continuing right to cancel the buyer's order at any time after the applicable time set forth in paragraph (a)(1) of this section by so notifying Zaappaaz prior to actual shipment.

    d. Zaappaaz requested, simultaneously with or subsequent to offers of the option to cancel and receive a prompt refund, consent from the buyers to further unanticipated delays beyond the definite revised shipping dates, and informed the buyers of the buyers' continuing right to cancel.

69.    Where Zaappaaz was unable to ship merchandise on or before the definite revised shipping date and consented to by the buyer, Zaappaaz offered to the buyer, clearly and conspicuously and without prior demand, a renewed option either to consent to a further delay or to cancel the order and to receive a prompt refund. Said offer was made within a reasonable time after Zaappaaz first became aware of its inability to ship before the said definite revised date, but in no event later than the expiration of the definite revised shipping date or to the date to which the buyer specifically consented.

16

a.  Any offer to the buyer of said renewed option provided the buyer with a new definite revised shipping date, but where Zaappaaz lacked a reasonable basis for providing a new definite revised shipping date, the notice informed the buyer that Zaappaaz was unable to make any representation regarding the length of the further delay.

b.  The offer of any renewed option expressly inform the buyer that, unless Zaappaaz received, prior to the expiration of the old definite revised shipping date or any date superseding the old definite revised shipping date, notification from the buyer specifically consenting to the further delay, the buyer would be deemed to have rejected any further delay, and to have cancelled the order if Zaappaaz was in fact unable to ship prior to the expiration of the old definite revised shipping date or any date superseding the old definite revised shipping date. Provided, however, that where Zaappaaz offered the buyer the option to consent to an indefinite delay the offer expressly informed the buyer that, should the buyer so consent to an indefinite delay, the buyer would have a continuing right to cancel the buyer's order at any time after the old definite revised shipping date or any date superseding the old definite revised shipping date.

16 C.F.R. § 435.2(b)(2).

70.  Wherever a buyer had the right to exercise any option or to cancel an order by so notifying Zaappaaz prior to shipment, Zaappaaz furnished the buyer with adequate means, at Zaappaaz's expense, to exercise such option or to notify the seller regarding cancellation. 16 C.F.R. § 435.2(b)(3).

17

**Azim Makanojiya not Liable Individually**

71.     A member of a limited liability company may be named as a party in an action by or against the limited liability company only if the action is brought to enforce the member's right against or liability to the company." Tex. Bus. Org. Code § 101.113. "Except to and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." Tex. Bus. Org. Code § 101.114.

72.     The Texas Business and Organizations Code "eliminated the alter ego theory as a basis for disregarding the corporate structure." *TransPecos Banks v. Strobach*, 487 S.W.3d 722, 729-30 (Tex. App.–El Paso 2016, no pet.). As the *TransPecos* court recognized, the sole method for establishing liability against a member or shareholder is to show that the affiliate caused the business entity "'to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber or affiliate.'" *Id*. (quoting Tex. Bus. Org. Code § 21.223(b)).[2]

73.     As the *TransPecos* court further explained:

[T]he Legislature expressly placed the burden of proof on the corporate obligee to demonstrate that a corporate affiliate used the corporation to perpetrate an actual fraud on the obligee for his direct personal benefit.… Further, we have noted that when a corporate obligee seeks to establish that the corporate affiliate engaged in actual fraud through the use of a misrepresentation, the obligee similarly shoulders the burden of establishing the existence of the traditional elements of a misrepresentation claim, including that the affiliate engaged in a representation that was: (1) material; (2) false; (3) knowingly false or made with reckless disregard for its truth or falsity; (4) made

---

[2] Tex. Bus. Org. Code §21.223 also applies to limited liability companies. Tex. Bus. Org. Code § 101.002; *TecLogistics, Inc. v. Dresser-Rand Group, Inc*. 527 S.W.3d 589, 597 n.11 (Tex. App.–Houston [14th Dist.] 2017, no pet.).

with the intention that it be acted upon by the other party; (5) relied upon by the other party; and (6) damaging to the other party.

*TransPecos*, 487 S.W.3d at 731

74.     In *TecLogistics, Inc. v. Dresser-Rand Group, Inc*. 527 S.W.3d 589 (Tex. App.– Houston [14th Dist.] 2017, no pet.), the Houston court of appeals held that the president of a corporation that was found liable for fraud could not be individually liable, even if the president knowingly participated in the fraud, because there was no evidence that the fraud was committed for the president's own personal and direct benefit. *TecLogistics*, 527 S.W.3d at 603.

### Jury Demand

75.     Defendants demand trial by jury.

### Prayer

76.     Defendants pray that Plaintiff take nothing and that Defendants be awarded all relief to which they may show themselves entitled, whether at law or in equity.

Respectfully submitted,

**FOR DEFENDANTS**

*/s/ Michael J. Blanchard*
State Bar No. 24036231

OF COUNSEL:

Butch Boyd Law Firm
Ernest W. Boyd (Lead Attorney)
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
Jeremy R. Stone (Of Counsel)
State Bar No. 24013577
jeremystone@butchboydlawfirm.com
Michael J. Blanchard (Of Counsel)
State Bar No. 24036231
mikeblanchard@butchboydlawfirm.com

19

2905 Sackett Street
Houston, TX 77098
713-589-8477 (Phone)
713-589-8563 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

I certify that that on September 7, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, served on users registered to receive electronic notice in the captioned case via transmission of Notices of Electronic Filing generated by CM/ECF, and via email on the counsel listed below.

Michelle Schaefer
600 Pennsylvania Avenue, NW,
CC-9528 Washington, DC 20580
(202) 326-3515; mschaefer@ftc.gov
(202) 326-2485; acollesano@ftc.gov

James E. Elliott,
Federal Trade Commission Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9373; jelliott@ftc.gov
(214) 979-9350 (main office)
(214) 953-3079 (fax)

*/s Michael J. Blanchard*
Michael J. Blanchard