IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | § § § | |
| V. | § § § § | Civil Action No. 4:20-CV-2717 |
| ZAAPPAAZ, LLC, ET AL. | § | |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO ALLEGED DAMAGES**

Defendants file this Motion and respectfully shows as follows:

### I.   Background

**A.   The FTC has historically exceeded its authority.**

This important case demands faithful attention to the limits of governmental power, including the statutory text from which the FTC derives its power.

Congress authorized the FTC to prevent "unfair or deceptive acts or practices." *See AMG Capital Mgmt., LLC v. FTC*, __ U.S. __, 141 S.Ct. 1341, 1345. At its initial creation in 1914, the FTC's enforcement powers were administrative in nature. *Id*. Congress authorized court remedies in the 1970s. *Id*. A 1973 bill (which became Section 13(b) of the FTC Act) allowed the FTC to obtain limited equitable relief, including permanent

1

injunctions, in court. *Id.* at 1346. In the late 1970s, the FTC began to use Section 13(b) to obtain equitable *monetary* relief. *Id.*

The FTC convinced courts across the country that its powers included the ability to win equitable monetary relief when, as the *AMG* court explained, Congress had never granted that power to the FTC. *Id.* at 1349.

The FTC is thus at a crossroads. In *AMG's* wake, the Commission is trying to hoodwink courts all over the country (again) to rubber stamp an exercise of power the FTC simply does not have. This Court's constitutional duty is to apply the law as written. That is all Defendants ask the Court to do.

**B. The FTC overreaches in this case.**

Here, the FTC alleges Defendants misled consumers about having personal protective equipment ("PPE") "in stock" and "ready to ship." In fact, Zaappaaz had product in stock.[1] Zaappaaz had substantial pre-pandemic experience in shipping goods to American consumers but could

---

[1] Ex. A at 125:16-24; Ex. B at 474:14-19, 482:20 to 483:05; Ex. C at 618:21-25, 640:3-20, 645:14-17, 704:10-24.

2

not have anticipated logistical nightmares the pandemic caused.[2] Neither could Zaappaaz have predicted that the Chinese government would issue new regulations and change old ones on the fly throughout the pandemic.[3]

The changed logistical and regulatory environment proved too much.[4] When Zaappaaz timely placed packages in the hands of third-party shippers like FedEx and UPS, those shippers could not timely deliver the packages.[5] That is not Zaappaaz' fault, and the FTC has no authority to hold Zaappaaz accountable for shipper delays. The rule the FTC seeks to enforce specifically excludes such liability.

Notwithstanding the Supreme Court's castigation of the Commission's Section 13(b) theories in *AMG*, the FTC is undeterred. It now argues it is entitled to the same relief under Section 19 that it had for decades sought and obtained under Section 13(b). It argues so without

---

[2] Ex. D at 65:13 to 66:3.

[3] *Id.* at 64:8-25.

[4] *See id.* at 195:17 to 197:5.

[5] *Id.* at 65:1-9.

any analysis of or deference to the significant textual differences between Section 13(b) and Section 19. The Government's apparent motto in this and similar cases is: "We have this power because we say we do."

## II. Motion for Partial Summary Judgment as to Monetary Relief under Section 13 of the FTC Act

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As discussed above, *AMG* prohibits the FTC from recovering monetary relief under Section 13(b). No facts could ground a monetary judgment under Section 13(b), and Defendants ask the Court to grant summary judgment as to Plaintiff's claims for monetary relief under Section 13(b).

## III. Motion for Partial Summary Judgment as to Monetary Relief Under Section 19 of the FTC Act

### A. Defendants ask the Court to limit the FTC's alleged damages to that allowed by Congress.

The FTC seeks to wield power Congress never granted. There can be no genuine dispute as to any material fact regarding the scope of remedies available to the FTC. As such, Defendants ask the Court to grant Defendants summary judgment that, if the Commission proves

4

liability (it will not), then (a) the FTC may not recover gross revenues; and (b) the FTC must prove damages in this case, if any, by evidence of individualized consumer harm.

## B. Section 19 damages require proof of individualized consumer harm.

Under Section 19, the FTC may not recover any damages that operate as a penalty. *See* 15 USC § 57b(b) ("nothing in this section is intended to authorize any exemplary or punitive damages"). Section 19 further limits relief to that "*necessary* to redress *injury* to consumers … *resulting from* the rule violation or the unfair or deceptive act or practice, as the case may be." *Id.* (emphasis added).

The FTC will inevitably argue that courts may presume individual consumer harm under *FTC v. Figgie Int'l*, 994 F.2d 595, 605 (9th Cir. 1993, cert. denied). That case, however, was decided before *AMG* and without any meaningful analysis of Section 19's statutory text. *See generally id.*

*Figgie* also differs factually from the case at bar. In *Figgie*, the FTC obtained an administrative finding that Figgie misled consumers by marketing heat detectors as life-saving safety devices when in fact smoke

5

detectors were far more effective than heat detectors. *Id.* at 598-599. The Commission issued a cease and desist order prohibiting Figgie from misrepresenting the efficacy of heat detectors. *Id.* at 600. After the order was upheld on appeal, the FTC sued Figgie in district court for violating the order. *Id.* at 601.

To be clear, the FTC may seek relief under Section 19 under two scenarios. First, when a person violates a rule (*e.g.*, the Merchandise Rule); second, when a person's conduct is the subject of a cease and desist order, and the person committed the conduct knowingly. *See* 15 U.S.C. § 57b(a)(2). There is no cease and desist order in this case. However, the available relief does not depend on whether a person violates a rule or a person's conduct is the subject of a cease and desist order.

The *Figgie* court explained that under Section 19, "there may be no redress without proof of injury caused by [the deceptive practices]" and that "relief must be *necessary* to redress the injury." *Id.* 605 (emphasis added).

These elements of proof were easy to meet in *Figgie*: the company marketed heat detectors as having life-saving qualities the heat detectors did not have. *See id.* In other words, *Figgie* consumers received something

6

of zero value compared to what Figgie promised. *See id.* In analyzing the amount of redress appropriate under the facts, the Ninth Circuit explained that "Congress expressly prohibited exemplary or punitive damages under [the statute]." *Id.* at 607.

As such, any damage award had to provide direct redress to consumers wronged by the allegedly harmful conduct. *Id.* The FTC has no evidence in this case as to the amount of money necessary to provide direct consumer redress.

In holding the FTC need not prove individual consumer reliance in that specific case, the *Figgie* court conflated Sections 13(b) and 19 of the FTC Act. *See id.* Specifically, the Ninth Circuit extrapolated that because individual reliance need not be proved under Section 13(b), then individual reliance need not be proved under Section 19. *Id.* Both cases cited in *Figgie* for its reliance holding were decided under Section 13(b). *See id.* Without comparing the texts of Section 13(b) and Section 19, the *Figgie* court crossed a logical chasm to say that "The same reasoning [that applies to Section 13(b)] is applicable to Section 19."

The statutes' textual differences, however, are vast. Through Section 13(b), Congress granted the FTC regulatory power it could

7

exercise whenever it had "reason to believe that any person … is violating or is about to violate any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b). Congress authorized the Commission to obtain temporary restraining orders and preliminary injunctions without bond. *Id.* Congress further authorized the FTC to obtain permanent injunctions "in proper cases" and "after proper proof."

Again, the FTC exaggerated the extent of its power repeatedly, over decades, and across the United States to win monetary relief under Section 13(b). It convinced scores of district and circuit courts it had power it never had, until the Supreme Court disabused the Commission of this notion in 2021 and, in so doing, overruled decades of law. *See AMG*, 141 S.Ct. 1341.

In contrast to Section 13(b), Section 19 severely limits the scope of relief available to the Commission. Section 19 authorizes "such relief as the court finds necessary to redress *injury*…." 15 U.S.C. § 57b(b). Section 13(b) has no "injury" requirement in the text; the statute presumes injury. *See generally* 15 U.S.C. § 53(b). Section 19 further limits relief to that for injuries *resulting from* a rule violation. *Id.* Section 13(b) has no such causal nexus requirement. *See generally* 15 U.S.C. § 53(b).

8

At least two district courts have exercised their constitutional duties and limited the FTC's power to only the power Congress granted. *See FTC v. Zurixx LLC*, No. 2:19-cv-713-DAK-DAO, 21 U.S. Dist. LEXIS 216023 (D. Utah 2021); *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 U.S. Dist. LEXIS 226238 (D. Ariz. 2021).

In *Zurixx*, the FTC and Utah attorney general sued Zurixx for violations of federal and state consumer protection laws. 21 U.S. Dist. LEXIS 216023 at *3-4. The district court issued a TRO under Section 13(b). *Id.* at *3. Later, the FTC amended its complaint to allege violations of an FTC rule. *Id.* In analyzing what relief the FTC could win, the *Zurixx* court cited *AMG* for the proposition that there were "certain *important* limitations on Section 19 damages." *Id.* at *7 (emphasis added). As the *Zurixx* court explained:

> However, the real crux of the Zurixx Defendant's argument that Section 19 damages do not justify an asset freeze and receivership pending a trial on the claims relates to the nature of the damages available under Section 19 as opposed to the type of damages previously available under Section 13(b). Prior to *AMG*, under Section 13(b), the FTC could seek disgorgement of allegedly ill-gotten gains measured by gross revenues. Because the FTC simply had to show the amount of revenues Defendants gained from their allegedly deceptive practices, it could easily seek a preliminary injunction with an asset freeze and receivership. In this case, the FTC could, and did, point to over $500 million in revenues as potential

9

> damages. But Section 19 offers the FTC a significantly different type of damages. To obtain the consumer redress allowed under Section 19, the Zurixx Defendants contend that the FTC must show the extent to which each consumer was harmed from the TSR violations, not merely gross revenues. The FTC's reliance on Zurixx's gross telemarketing sales in the three years leading up to the Complaint does not demonstrate the individual consumer redress damages that are at issue under Section 19. Because Plaintiffs must now rely on specific violations, the justification for imposing an asset freeze and receivership has also changed significantly.

*Id.* at *19-20.

The *Zurixx* court concluded: "gross revenues do not paint an accurate picture of potential damages." *Id.* at *21. The court reasoned that "the individualized nature of the consumer redress available under Section 19" was not at issue when the FTC brought its pre-*AMG* complaint. *Id.* The court accepted that the FTC had proved rule violations but added that the FTC "can no longer assume that every sale resulted in consumer injury." *Id.* at *22. The court went on:

> The change in this case from the previous gross revenue damages under Section 13(b) to the individualized consumer redress damages under Section 19 is a significant change in not only the amount of damages but the type of evidence needed to demonstrate those damages.

*Id.*

As in *Zurixx*, the FTC cannot assume that every sale in this case

10

resulted in consumer injury. It must prove individualized reliance. *See id.*

In *Noland*, the FTC moved for summary judgment as to monetary remedies in another Section 19 rule violation case. 2021 U.S. Dist. LEXIS 226238, at *2. The FTC's theory was that, at the moment any shipment became overdue under the Merchandise Rule, the consumer immediately suffered harm equal to the purchase price of the unshipped product, irrespective of whether the consumer later received the product from the defendants. *Id.* at *7-8. In *Noland*, the FTC conceded that no court had (at that time) "applied the approach it advocates for here." *Id.* at *10.[6]

In analyzing available remedies, the *Noland* court recognized that the FTC's "all-or-nothing" approach is flawed because it "fails to account for the inherent value of the product that consumers ultimately received, even if the product was shipped late." *Id.* at *11. In other words, the FTC's proposed methodology "goes beyond redressing injury to consumers and provides a potential windfall to consumers." *Id.* at *12.

---

[6] The undersigned recognizes the duty of candor owed to the Court. Since the District of Arizona court decided *Noland*, at least two district courts have declined to adopt its reasoning.

There is no "proof of injury" in that scenario. *Id.* at 13.

The *Noland* and *Zurixx* courts met their constitutional duties by recognizing all the power Congress granted the FTC under Section 19 but not an ounce more. That is what Defendants respectfully ask the Court to do in granting this Motion for Summary Judgment.

### IV.   Conclusion

The FTC has a documented history of abusing the authority Congress granted it. In a unanimous opinion, the Supreme Court in *AMG* brought to heel the FTC's flagrant abuse of governmental power. Defendants respectfully ask the Court to recognize the statutory differences between Section 13(b) and Section 19 and apply Section 19 as written. In doing so, the Court can reach no conclusion other than that the FTC must prove individualized consumer injury to obtain monetary relief in this case.

### V.   Prayer

Defendants ask the Court to grant their Motion for Summary Judgment, dismiss claims for monetary relief under Section 13(b) with prejudice, and limit the scope of any potential relief to actual individualized consumer injury.

Dated: October 26, 2022.

Respectfully submitted,

FOR DEFENDANTS

*/s/ Michael J. Blanchard*
State Bar No 24036231

OF COUNSEL:

Butch Boyd Law Firm
Ernest W. Boyd (Lead Attorney) State Bar No. 00783694
butchboyd@butchboydlawfirm.com
Michael J. Blanchard (Of Counsel)
State Bar No. 24036231
mikeblanchard@butchboydlawfirm.com
Jillian Scherrer
jillianscherrer@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
713-589-8477 (Phone)
713-589-8563 (Fax)

## **CERTIFICATE OF SERVICE**

I certify that that on October 26, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, served on users registered to receive electronic notice in the captioned case via transmission of Notices of Electronic Filing generated by CM/ECF, and via email on the counsel listed below.

> Michelle Schaefer
> 600 Pennsylvania Avenue, NW,
> CC-9528 Washington, DC 20580
> (202) 326-3515; mschaefer@ftc.gov
> (202) 326-2485; acollesano@ftc.gov
>
> James E. Elliott,
> Federal Trade Commission
> Southwest Region 1999 Bryan
> Street, Suite 2150
> Dallas, Texas 75201
> (214) 979-9373; jelliott@ftc.gov
> (214) 979-9350 (main office)
> (214) 953-3079 (fax)

>> */s Michael J. Blanchard*
>> Michael J. Blanchard

14