United States District Court
Southern District of Texas
**ENTERED**
June 09, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | § | |
| | § | |
| *Plaintiff*, | § | |
| vs. | § | No. 4:20-cv-2717 |
| | § | |
| ZAAPPAAZ, LLC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDER

This is a consumer fraud case.[1] The Federal Trade Commission (the "FTC") alleges that Zaappaaz, LLC ("Zaappaaz") and Azim Makanojiya (together, "Defendants") misled consumers regarding when personal protective equipment ("PPE")[2] it sold during the COVID-19 pandemic would be delivered. Pending before the Court are the FTC's motion for summary judgment, ECF No. 99,[3] Defendants'

---

[1] The district judge to whom this case is assigned referred this matter for all pretrial purposes pursuant to 28 U.S.C. § 636. Order, ECF No. 50. A motion for summary judgment is dispositive and therefore is appropriate for a report and recommendation. 28 U.S.C. § 636(b)(1)(A)&(B). Discovery motions, evidentiary motions, and motions to strike are non-dispositive and appropriate for ruling. *Id.*

[2] Protective devices, garments, or coverings (such as respirators, helmets, face shields, boots, or gloves) that are worn especially by workers to minimize exposure to hazards that may cause injury or illness. *Personal protective equipment*, Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/ personal%20protective%20equipment (last visited June 5, 2023).

[3] Defendants filed a response to Plaintiff's motion for summary judgment, and motion to exclude the testimony of Rufus Jenkins, ECF No. 108, the FTC filed a reply, ECF No. 113, and the FTC filed a notice of supplementary authority, ECF No. 116. Defendants also filed an Expedited and

motion for partial summary judgment on damages,[4] ECF No. 101, Defendants' objections to Plaintiff's summary judgment evidence, ECF No. 102, and Plaintiff's motion to exclude the testimony of Rosemary Coates, ECF No. 112.[5]

In this action, the FTC alleges that Zaappaaz failed to timely ship PPE to consumers in violation of the Mail, Internet, or Telephone Order Merchandise Rule (the "Merchandise Rule"), 16 C.F.R. § 435, and made materially misleading statements to consumers in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"). The issues before the Court are whether the FTC has demonstrated that there is no genuine issue of material fact such that it is entitled to summary judgment as a matter of law and whether Defendants have established that they are entitled to partial summary judgement as a matter of law.

Based on thorough consideration of the briefing, the evidence, and the applicable law, the Court finds that the uncontroverted facts establish that Zaappaaz failed to timely deliver PPE to a large portion of its customers and further failed to notify them of the anticipated delay after their orders were placed or provide them with an option to cancel their orders. These acts violate the Merchandise Rule and

---

Opposed Motion to Strike Plaintiff's Motion for Summary Judgment, Motion to Strike Certain Summary Judgment Evidence, and Objections to Plaintiff's Summary Judgment Evidence. ECF No. 102. The Court denied Defendants' motions to strike, ECF No. 109. The Court considers Defendants' objections to the FTC's summary judgment evidence below.

[4] The FTC filed a response. ECF No. 104.

[5] Defendants filed a response, ECF No. 114, and Plaintiff filed a reply, ECF No. 115.

the FTC Act. Thus, the Court recommends that the FTC's motion for summary judgment should be granted as to liability. However, the Court finds that issues of fact remain as to the appropriate remedy and therefore the FTC's motion should be denied as to damages and Defendant's motion for partial summary judgment on damages likewise should be denied. Because the pandemic is over, there is no showing of a danger of recurrent violations in the future with respect to PPE. Thus, the FTC's request for a permanent injunction to prevent Defendants from offering PPE for sale should be denied. Further, because the Court recommends that the FTC's motion for summary judgment be granted as to liability, the Court should deny Plaintiff's motion to exclude the testimony of Rosemary Coates as moot because her testimony was limited to the issue of liability.

## I.   STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zavala v. Texas Lehigh Cement Co., LP*, No. 1:21-CV-00082-DAE, 2022 WL 18046467, at *2 (W.D. Tex. Oct. 12, 2022) (quoting *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018)).  A fact is material

"if and only if proof of its existence might affect the outcome of the case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine [dispute] of material fact." *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)). When ruling on a motion for summary judgment, the Court views all facts and inferences in the light most favorable to the nonmoving party and resolves all disputed facts in its favor. *Rodriguez v. City of Laredo*, 459 F. Supp. 3d 809, 814 (S.D. Tex. 2020).

The Court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Id*. (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "Summary judgment cannot be defeated through '[conclusory] allegations and denials, speculation, improbable

4

inferences, unsubstantiated assertions, and legalistic argumentation.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). Rather, the non-movant must demonstrate specific facts identifying a genuine issue to be tried to avoid summary judgment. FED. R. CIV. P. 56(e). "Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Tri Invs., Inc. v. United Fire & Cas. Co.*, 553 F. Supp. 3d 400, 404 (S.D. Tex. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## II.   FACTUAL BACKGROUND

Zaappaaz is a Texas corporation formed in 2008. Answer at ¶¶ 6-7, ECF No. 100-115. Mr. Makanojiya founded, owns, and operates the company. *Id*. Until March 2020, Zaappaaz primarily marketed and sold consumer promotional goods, such as wristbands, lanyards, keychains, and can coolers. *Id*. at ¶ 15. Zaappaaz sold these goods through its websites: www.Wrist-band.com, WBpromotion.com, and CustomLanyard.net. Makanojiya Dep. (Aug. 11, 2021) 107:3-108:14, ECF No. 100-22. Although each of these websites has a different domain name, they are identical. *Id*. Zaappaaz's primary supplier was Chandler Liu, a vendor based in China. *Id*. at 61:15-62:17. Mr. Liu packaged Zaappaaz's products and drop-shipped[6] them

---

[6] Drop-shipping is a type of retail fulfillment method where instead of warehousing inventory,

directly to its customers. *Id*. at 74:24-75:6. Zaappaaz had similar drop-ship relationships with other vendors, including Yaoli, USKY, USB, and Skyee. *Id*. at 76:11-22.

When customers ordered products from one of Zaappaaz's websites, it recorded the order number, order date, delivery date, shipping days, and the ordered product. Makanojiya Dep. (Aug. 11, 2021) 84:15-85:13, ECF No. 100-22; Makanojiya Dep. (Aug. 12, 2021) 235:20-239:7, ECF No. 100-42. After customers ordered a product from Zaappaaz, Mr. Liu received the order information and fulfilled the customer's order. Makanojiya Dep. (Aug. 11, 2021) 82:21-83:1, ECF No. 100-22. After shipping the product, Mr. Liu provided Zaappaaz with the tracking number. *Id*. at 83:2-12.

In March 2020, during the early part of the pandemic in the United States, Zaappaaz began offering PPE to consumers, including face masks. *Id.* at 109:9-16. Zaappaaz sourced PPE through Mr. Liu, a broker named Yaoli, and a supplier in Malaysia. *Id*. at 111:11-113:5; Makanojiya Dep. (Aug. 12, 2021) 291:23-292:1, ECF No. 100-42. Prior to confirming their purchase of PPE from Zaappaaz, customers were provided the products' shipping time, production time, and promised delivery

---

retail merchants purchase product from third-party suppliers as customers make orders. The suppliers ship the product directly to the customers instead of the retailers who took the orders. *See Drop-ship*, Merriam-Webster.com, *available at* https://www.merriam-webster.com/dictionary/drop-ship (last visited on June 5 2023).

date. Rottner Decl. Attach. B at 31, ECF No. 100-73. After confirming their purchase, customers received an email from Zaappaaz with that same information. Rottner Decl. Attach. AM, ECF No. 100-73. Thereafter, when orders were assigned tracking numbers, Zaappaaz sent a second email to customers with their order's tracking number. Makanojiya Dep. (Aug. 12, 2021) 252:7-25, ECF No. 100-42.

Zaappaaz advertised its PPE as in stock and provided rush and same day shipment options. Defs.' Ans. ¶¶ 14-15, ECF No. 100-115; Faber Decl. ¶ 12, ECF No. 100-11. For example, on its websites, Zaappaaz stated the following:

- "GUARANTEED TO SHIP TODAY," Rottner Decl. Attach. V at 147, ECF No. 100-1;

- "IN STOCK – SHIPS SAME DAY," *id*.;

- ALL PRODUCTS IN STOCK READY TO SHIP," Rottner Decl. Attach. W at 150, ECF No. 100-1.

Through email, Zaappaaz also communicated the following: "ALL OF THESE PRODUCTS ARE FULLY IN STOCK, READY TO SHIP SAME DAY AND DELIVER IN 24 HOURS." Omnisend Advertisement Information at Sheet1, ECF No. 100-30.

In March 2020, Zaappaaz recognized that the pandemic had "slowed down" its production and disrupted its supply chain. May 1, 2020 email from riskteam@braintreepayments.com to azimm@wrist-band.com, ECF No. 100-50

("Our production has slowed down and supply chain has been dis[rupted] due to corona virus [sic]"). Although it is not clear whether these issues affected PPE or were limited to Zaappaaz's promotional merchandise, by April 2020, Zaappaaz experienced issues filling PPE orders in a timely manner. Makanojiya Dep. (Aug. 11, 2021) 116:21-117:11, ECF No. 100-22. These problems are reflected in the increase in Zaappaaz customer complaints from zero in January 2020 to 820 in April 2020. Complaint Summary, ECF No. 100-54. New restrictions in China affected Zaappaaz's ability to acquire PPE and deliver it to consumers. Makanojiya Dep. (Aug. 11, 2021) 118:17-120:24, ECF No. 100-22. Furthermore, on April 1, 2020, FedEx announced weight limitations on the amount customers could ship per day. *Id*. 120:8-24, 135:4-9. These combined changes prevented Zaappaaz from drop-shipping PPE from its vendors in China and Asia directly to consumers in the United States and required it to change its operations.

Consequently, Zaappaaz shipped inventory to its warehouse in Sugarland, Texas. Zaappaaz then filled orders itself and shipped the PPE from its warehouse to consumers in the United States. *Id*. at 39:14-24, 118:2-5, 179:11-180:1. However, because of shipping restrictions that were in place for three- or four-weeks during April, Zaappaaz could send only one shipment at a time to its Texas warehouse. *Id*. at 179:15-181:14. To circumvent these restrictions, Zaappaaz shipped items from China to various addresses in the area and then transported those packages to its

Texas warehouse. *Id*. Once these restrictions were lifted in late April, Zaappaaz shipped its inventory from China directly to its warehouse. Makanojiya Dep. (Aug. 11, 2021) 180:25-181:14, ECF No. 100-22.

## III.   DEFENDANTS' EVIDENTIARY OBJECTIONS ARE OVERRULED.

Before considering the merits of the FTC's motion for summary judgment, the Court must first consider Defendants' objections to evidence on which the FTC relied. Defendants object to 93 of the FTC's 118 exhibits. ECF No. 102 at 4-11. In almost all cases, Defendants' objections to a document simply cite a rule, *id*. at 4 (i.e., "FED R. EVID. 408") or state a one word objection without providing any explanation for the objection, *id*. at 5 ("Irrelevant"). These objections are improper.

First, the objections fail to identify the precise material that is objectionable. "The court is not required to review large quanta of evidence to ferret out inadmissible statements." *Patton v. Meridian Sec. Ins. Co.*, 617 F. Supp. 3d 516 (N.D. Tex. 2022). Rather, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the evidence the party wishes to exclude and stating the precise grounds upon which each piece of evidence should be excluded. *See United States v. Williams*, No. 20-10433, 2021 WL 2819016, at *3 (5th Cir. July 6, 2021) (finding that the district court properly exercised its discretion not to strike declaration in part because "'evidentiary objections must be specific'" and party asserted general objections) (quoting *United States v. Avants*, 367 F.3d

433, 445 (5th Cir. 2004)).

Second, the objections are conclusory and lack specificity. "Objections lacking specificity do not satisfy the requirements of Rule 103." *Patton*, 617 F. Supp. 3d at 526. "'A loosely formulated and imprecise objection will not preserve error. Rather, a trial court judge must be fully apprised of the grounds of an objection.'" *Id*. (quoting *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998)); *see also In re Slamdunk Enterprises, Inc.*, No. 17-60566, 2021 WL 389081, at *24 (Bankr. E.D. Tex. Jan. 29, 2021) ("Where a hearsay objection is conclusory and scant at best, such objection is not properly made and should be summarily overruled.").

Because "it is not the Court's responsibility to comb through the record to determine the basis for [Defendants'] cursory objections or to make arguments on [their] behalf," Defendants objections are overruled. *Gilmour v. Intertek USA, Inc.*, No. 3:16-CV-00266, 2018 WL 3059682, at *3 (S.D. Tex. May 30, 2018), *report and recommendation adopted*, No. 3:16-CV-00266, 2018 WL 3055749 (S.D. Tex. June 20, 2018) (quoting *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 824 (E.D. La. 2017) (overruling party's objection where they failed to provide an explanation)).

## IV.   DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF RUFUS JENKINS AND ELIZABETH MILES IS DENIED.

The FTC submitted declarations from two witnesses, Elizabeth Anne Miles and Rufus L.M. Jenkins, in support of its motion. Miles Decl., ECF No. 100-99; Jenkins Decl., ECF No. 100-100. Defendants ask the Court to exclude the FTC's

evidence of consumer injury because Ms. Miles and Mr. Jenkins were not disclosed as experts. ECF No. 108. The FTC responds that they are not expert witnesses, but instead present summary testimony pursuant to Federal Rule of Evidence 1006. ECF No. 113 at 12. The Court agrees that Ms. Miles and Mr. Jenkins are not expert witnesses.

The Fifth Circuit "expressly allows summary witnesses to summarize voluminous records in complex cases." *United States v. Baker*, 923 F.3d 390, 397 (5th Cir. 2019). "[W]hen a chart does not contain complicated calculations requiring the need of an expert for accuracy no special expertise is required in presenting the chart." *S.E.C. v. Seghers*, 298 F. App'x 319, 326 (5th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984)). In *Seghers*, the Fifth Circuit allowed charts and testimony from a summary witness who summarized "the total values of [three hedge funds] reported to investors each month with the total values listed in statements of the banks and brokers who held the [hedge funds'] assets." *Id*. at 324-27. While Rule 1006 generally applies to the submission of evidence at trial, it has been applied in the summary judgment context. *See, e.g., Wooten v. Federal Express Corp.*, No. 3:04CV1196–D, 2007 WL 63609, at *25 (N.D. Tex. Jan. 9, 2007), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009); *Martinez v. Prestige Ford Garland Ltd. P'ship*, No. 3:03–CV–251–L, 2004 WL 1194460, at *4, n. 7 (N.D. Tex. May 28, 2004), *aff'd*, 117

Fed. Appx. 384 (5th Cir. 2005).

Here, Ms. Miles compiled order, production days, pick up, shipping, and delivery information to calculate the promised shipping date for Zaappaaz PPE orders and the number of orders that were delivered after the promised delivery date. Miles Decl. ¶¶ 20-25, ECF No. 100-99. Ms. Miles created an excel spreadsheet that combined Zaappaaz's information regarding 97,967 orders and information third party carriers provided about those orders. *Id*. ¶¶ 5, 13. Finally, Ms. Miles used these summary figures to calculate the percentage of orders that were on time. *Id*. ¶¶ 21, 25. There is no dispute the information summarized is voluminous or that it was made available to Defendants. Further, Defendants do not challenge the contents of Ms. Miles's summary. *Pratt v. Mut. of Omaha Ins. Co.*, No. 415CV00009DMBJMV, 2016 WL 1248885, at *2 (N.D. Miss. Mar. 28, 2016) (finding that Rule 1006 evidence was appropriate to consider on summary judgment in part because information summarized was not challenged).

Similarly, Mr. Jenkins took Ms. Miles's summaries and applied simple arithmetic to calculate Zaappaaz's revenue from PPE that was not delivered on time. Jenkins Decl. ¶4, ECF No. 100-100. Again, the information from which Mr. Jenkins made his calculation was voluminous and Defendants do not challenge the contents of Mr. Jenkins's summary. *Pratt*, 2016 WL 1248885, at *2.

Defendants contend that because Mr. Jenkins relied on Ms. Miles's summary

to calculate Zaappaaz's PPE revenue, he "relied on outside sources beyond his personal knowledge developed from primary sources" and must be excluded pursuant to Federal Rule of Evidence 702. ECF No. 108 at 10. In support of this argument, Defendants cite *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011). However, *James River* does not support Defendants' contention that reliance on data another person compiled renders summary testimony an expert opinion. Instead, the Tenth Circuit found that the proposed testimony in *James River* was expert testimony because it relied on "a technical report by an outside expert" that used "specialized accounting calculations." *Id*. Here, Ms. Miles is not an outside expert, nor did she or Mr. Jenkins use any specialized accounting calculations. Moreover, Rule 1006 was not at issue in *James River*, rather, the issue was whether the proposed testimony was proper lay opinion testimony under Rule 701.

Accordingly, the Court finds that Ms. Miles's and Mr. Jenkins's summaries are proper under Rule 1006 and will consider them in evaluating the FTC's motion for summary judgment. Defendants' motion to exclude Ms. Miles's and Mr. Jenkins's declarations is denied.

## V. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO THE FTC'S MERCHANDISE RULE AND SECTION 5 CLAIMS.

The FTC seeks summary judgment on its claims that Zaappaaz violated the Merchandise Rule and Section 5 of the FTC Act. Defendants contend that summary

judgment should not be granted because summary judgment is not appropriate in complex cases. ECF No. 108 at 15-16. Defendants also argue that summary judgment should not be granted with respect to the FTC's Merchandise Rule claim because the Rule was promulgated pursuant to an unconstitutional delegation of legislative authority. *Id*. at 20. As explained below, both contentions are meritless. The Court addresses these arguments and determines that there is no genuine issue of material fact precluding summary judgment as to liability with respect to the FTC's Merchandise Rule and Section 5 of the FTC Act claims.

### A. Summary Judgment Is Appropriate In Complex Cases If There Is No Dispute Of Material Fact.

As a preliminary matter, Defendants argue that summary judgment is not appropriate for cases that involve intent or are complex involving lengthy affidavits and voluminous documents. ECF No. 108 at 15-16. This argument is without merit.

First, "Section 5(a) of the FTC Act does not have an intent to deceive requirement." *In re Gugliuzza*, 527 B.R. 370, 376 (C.D. Cal. 2015). Likewise, "[t]o obtain consumer redress under Section 57b of the FTC Act, the Government need only prove the existence of rule violations, with no state-of-mind requirement." *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1170 (C.D. Cal. 2021). Thus, neither of the FTC's causes of action require proof of intent. Even if they did, the "presence of an intent issue does not automatically preclude summary judgment; the case must be evaluated like any other to determine whether a genuine issue of

material fact exists." *United States ex rel. Drummond v. BestCare Lab'y Servs.*, L.L.C., 950 F.3d 277, 281 (5th Cir. 2020).

Second, although this case involved a large record with voluminous depositions and documents, Defendants' contention that summary judgment is inappropriate for complex cases is unsupported. Defendants cite only one case for this argument. ECF No 108 at 15-16 (citing *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 413 (5th Cir. 1980)). In *Keiser*, the Fifth Circuit stated, in dicta, that "[s]ummary judgment is apt to be inappropriate in an action based on a complex scheme of fraud." 614 F.2d at 413. Dicta is not necessary to the ruling and consequently is not binding. *United States v. Wallace*, 964 F.3d 386, 389 (5th Cir. 2020). Furthermore, the Fifth Circuit did not in *Keiser*, or in any subsequent case, adopt any rule against summary judgment in complex cases. Quite to the contrary, the Fifth Circuit has repeatedly found that summary judgment "is available, despite apparent complexity, in a case in which there is no genuine issue of material fact in dispute." *Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 303 (5th Cir. 1984); *see also Andrews v. Lomar Shipping, Ltd.*, 710 F. App'x 207, 208 (5th Cir. 2018) (rejecting party's argument that district court erred in granting summary judgment in a complex matter).

Accordingly, the Court will consider the evidence and determine if there is an issue of material fact.

**B. Summary Judgment Should Be Granted With Respect To The FTC's Merchandise Rule Claims.**

The FTC argues that Zaappaaz violated the Merchandise Rule because it (1) did not have a reasonable basis for its advertised shipping claims; (2) refused to offer consumers, without prior demand, the opportunity to either cancel their orders and receive a refund or consent to a shipping delay in response to late shipments; and (3) declined to deem orders cancelled and to provide prompt refunds when required. ECF No. 99 at 18. In response, Defendants argue that the Merchandise Rule is an unconstitutional delegation of legislative authority and that Defendants' pre-pandemic experience selling promotional items provided a reasonable basis for their shipping claims. The Court addresses each of these arguments in turn.

### 1. The Merchandise Rule

The Merchandise Rule proscribes three distinct practices relating to shipping merchandise and refunding consumers. *See* 16 C.F.R. § 435.2. First, a seller may not solicit orders for merchandise "unless, at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer." *Id*. § 435.2(a). Shipment must be either within the time "clearly and conspicuously stated" in the solicitation or, if no time is specified, within 30 days after a buyer's order. *Id*. § 435.2(a)(i)–(ii). Shipment means physically placing the merchandise "in the possession of the carrier." *Id*. § 435.1(e). Second, if the seller cannot ship within these timeframes, the seller must offer the buyer, "clearly and

conspicuously and without prior demand," the option to either consent to delayed shipping or cancel the order and receive a "prompt refund." *Id*. § 435.2(b)(1). Third, sellers must issue a prompt refund if, (1) prior to shipment, the buyer cancels the order; or (2) the seller fails to offer the buyer the option to consent to the delay and has not timely shipped the goods. *Id*. § 435.2(c)(1), (5).

### 2.  The Merchandise Rule is a proper delegation of legislative authority.

Defendants argue that the Merchandise Rule is an unconstitutional delegation of legislative authority because Congress failed to provide an intelligible principle to guide the agency's rulemaking. ECF No. 108 at 20. Specifically, Defendants contend that when Congress granted the FTC authority to promulgate rules defining "unfair or deceptive acts," it did not provide the FTC with "intelligible principles to guide its determination of what is 'deceptive.'" *Id*. The FTC responds that the Defendants are mistaken, and that Congress provided an intelligible principle to guide the FTC's rulemaking. ECF No. 113 at 18. The Court finds that the Merchandise Rule was promulgated pursuant to a constitutional delegation of Congressional authority.

Article I of the United States Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." "Accompanying that assignment of power . . . is a bar on its further delegation." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (internal quotations and

citation omitted).

Notwithstanding this bar, the Constitution does not deny Congress the necessary "flexibility and practicality" to perform its functions. *Id*. The Supreme Court has, therefore, recognized that "Congress may obtain the assistance of its coordinate Branches . . . and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Id*. (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). To that end, the Constitution only requires Congress to provide an intelligible principle which adequately guides the Executive agency. *See id*. (holding "that a statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform") (internal quotations and citation omitted). "The intelligible principle standard is 'not demanding.'" *Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 63 F.4th 441, 447 (5th Cir. 2023) (quoting *Gundy*, 139 S. Ct. at 2123).

The Fifth Circuit recently articulated that a Congressional delegation of authority is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 634 (5th Cir. 2022), *cert. granted*, No. 22-448, 2023 WL 2227658 (U.S. Feb. 27, 2023), *and cert. denied sub nom. Cmty. Fin. Servs. Ass'n of Am. v.*

*Consumer Fin. Prot. Bureau*, No. 22-663, 2023 WL 2227679 (U.S. Feb. 27, 2023)

(quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

All three requirements are present here. Congress passed § 57 for the express purpose of prescribing "rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce (within the meaning of section 45(a)(1) of this title)." 15 U.S.C. § 57(a)(1)(B). This purpose satisfies the general policy requirement. The agency tasked with applying the delegation is also specified; Congress vested the FTC with the authority to apply this policy. *Id.*

Congress also bounded the FTC's rulemaking authority by prescribing how the FTC should determine something is illegal and limiting the areas subject to such rulemaking. First, Section 5(n) of the FTC Act limits the FTC's ability to declare unfair practices illegal to instances where such practices cause or are likely to "cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition." 15 U.S.C. § 45(n). Just like in *Ass'n Cmty. Fin. Servs.*, Congress here "circumscribed [agency] authority by including specific criteria that must be met" before declaring activity unlawful. 51 F.4th 616 at 636. Second, Congress limited the areas in which the FTC could promulgate such rules. *See, e.g.,* 15 U.S.C. § 57(a)(1)(B) (prohibiting trade regulations regarding the development or utilization

of certifications or standards); 15 U.S.C. § 57(h) (prohibiting the FTC from promulgating rules related to certain children's advertising).

Defendants do not argue that the FTC's rulemaking authority does not meet the Fifth Circuit's test under *Ass'n Cmty. Fin. Servs*. Instead, Defendants contend that Congress failed to define "what is or is not 'deceptive,'" and, therefore, failed to provide the FTC an intelligible principle when prescribing rules pursuant to 15 U.S.C. § 57(a)(1)(B). ECF No. 108 at 20. Defendants do not cite any caselaw requiring Congress to define each word in a delegation of authority.

Quite to the contrary, the Fifth Circuit's recent opinion illustrates that Congress is not required to define every word. In *Cmty. Fin. Servs. Ass'n*, the Fifth Circuit found that Congress' delegation of "authority to prescribe rules prohibiting 'unfair, deceptive, or abusive acts or practices in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service'" was constitutional. 51 F.4th at 634 (quoting 12 U.S.C. § 5531(b)). Under that statute, Congress defined unfair and abusive but did not define deceptive.[7] The Fifth Circuit's failure to address the lack of definition

_____

[7] Although the Fifth Circuit found that the Consumer Financial Protection Bureau's (the "CFPB") rulemaking authority, 12 U.S.C. § 5531(b), was a constitutional delegation because Congress' "grant of rulemaking authority to the Bureau was accompanied by a specific purpose, objectives, and definitions to guide the Bureau's discretion," *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 635, it found the CFPB's funding mechanism, 12 U.S.C. § 5497(a), unconstitutional, *Cmty. Fin. Servs. Ass'n*, 51 F.4th 638. Under that funding mechanism, Congress "ceded indirect control by providing that the Bureau's self-determined funding be drawn from a source that is itself outside the appropriations process." *Cmty. Fin. Servs. Ass'n*, 51 F.4th 638. That issue was not raised here, nor

for deceptive is not surprising given that the word deceptive has been defined in many contexts and does not need further definition. *See Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV-1321, 2022 WL 4243957, at *7 (S.D. Tex. Sept. 13, 2022) ("An act or practice is deceptive when it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted.") (internal quotations omitted); *In re Porter*, 498 B.R. 609, 654 (Bankr. E.D. La. 2013) (same).

Although Congress chose to "confer substantial discretion" over the regulation of unfair or deceptive acts in the FTC Act, the delegation met the requirements the Fifth Circuit articulated in *Cmty. Fin. Servs. Ass'n*. Moreover, as broad as the FTC's rule making authority is, it cannot be said that Congress provided the FTC with no guidance. *Gundy*, 139 S. Ct. at 2139; *see Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ("If the intelligible principle standard means anything, it must mean that a total absence of guidance is impermissible under the Constitution."). Therefore, the FTC promulgated the Merchandise Rule pursuant to a constitutional delegation of Congressional authority.

### 3. *Zaappaaz did not have a reasonable basis to believe it would ship PPE on advertised timelines.*

The FTC contends that Zaappaaz solicited orders for PPE without a reasonable basis to expect Zaappaaz would ship the product to consumers on its

---

could it be because the FTC is funded through the normal appropriations process. 15 U.S.C. § 42.

advertised timelines. ECF No. 99 at 18-19 (citing 16 C.F.R. § 435.2(a)). In response, Zaappaaz argues that it had a reasonable basis based on its pre-pandemic experience shipping promotional items to customers. ECF No. 108 at 23. The Court finds that Zaappaaz lacked a reasonable basis for its shipping claims.

First, like many other sellers, Zaappaaz struggled to source PPE throughout the pandemic. *See, e.g., Fed. Trade Comm'n v. Am. Screening, LLC*, No. 4:20-CV-1021 RLW, 2022 WL 2752750, at *5 (E.D. Mo. July 14, 2022) (seller of medical supplies struggled to source PPE throughout 2020). Its websites stated that orders were guaranteed to ship today and ship same day, Rottner Decl. Attach. V at 147, ECF No. 100-1, and provided a promised delivery date, Rottner Decl. Attach. B at 31, ECF No. 100-73. But the uncontroverted evidence shows that the company did not ship within the advertised timeframes. From March to December 2020, over 50,000 PPE orders—59.5% of the total during that timeframe—were shipped late. Miles Decl. ¶ 21, ECF No. 100-99. Recently, one district court found that 10,000 late orders indicated that the defendant lacked a reasonable basis. *FTC v. QYK Brands LLC*, No. SACV201431PSGKESX, 2022 WL 1090257, at *5 (C.D. Cal. Apr. 6, 2022). Thus, the company's documented inability to timely ship PPE orders undercuts any argument that it had a reasonable basis to believe PPE could be shipped timely. *Am. Screening*, 2022 WL 2752750, at *5 (finding no reasonable basis where most orders took longer to ship than the advertised timeframe).

22

In addition, Zaappaaz was aware of supply chain issues affecting its ability to fulfill customers' orders beginning at least as early as March 2020. ECF No. 100-50 ("Our production has slowed down and supply chain has been dis[rupted] due to corona virus [sic]"); *see also* Makanojiya Dep. (Aug. 11, 2021) 116:21-117:11, ECF No. 100-22. Zaappaaz concedes this but contends that it "anticipated China would lift the restrictions quickly." ECF No. 108 at 22-23. Zaappaaz does not cite any facts or evidence supporting its expectation for how the Chinese government would respond to the pandemic. Zaappaaz's speculation is not a reasonable basis to conclude that the Chinese government would behave the way they hoped it would. *See F.T.C. v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 298 (D. Mass. 2008), *aff'd*, 624 F.3d 1 (1st Cir. 2010) (observing that subjective good faith does not satisfy reasonable basis test for company's claims); *F.T.C. v. US Sales Corp.*, 785 F. Supp. 737, 748 (N.D. Ill. 1992), *modified*, No. 91 C 3893, 1992 WL 104819 (N.D. Ill. May 6, 1992) ("An advertiser's good faith belief that his claim is substantiated is not enough."). The Court is aware of the complications the pandemic presented and is not unsympathetic to the challenges businesses faced. *See Am. Screening*, 2022 WL 2752750, at *6. Unfortunately, "the law provides no [leniency or] exceptions for sellers who do their 'best' during pandemics, particularly when customers paid upfront for PPE they need to maintain their own lives and livelihood." *Id.*

The FTC also argues that Zaappaaz did not have a reasonable basis for its

shipment claims because Zaappaaz did not have PPE in stock. ECF No. 99 at 19.

Defendants respond that Zaappaaz never advertised "a product as in stock that was

not in stock." ECF No. 108 at 6. The basis for this contention is that Zaappaaz was

never "short on inventory because the goods were available in China." Makanojiya

Dep. (Aug. 11, 2021) 126:5-18, ECF No. 108-2; *see also id.* at 175:2-8 ("we had

goods either in our U.S. warehouse or we had the goods in China"). However, that

PPE was available from its vendors in China does not mean that Zaappaaz had PPE

in stock. To the contrary, Zaappaaz's suppliers had PPE in stock. The advantage of

Zaappaaz's drop-shipping business model is that, as the seller, it does not need to

maintain inventory, but instead the goods are supplied directly from its vendors. As

Mr. Makanojiya testified, challenges in getting items from China to Zaappaaz's

customers in the United States caused "shortages of products that [it] could fulfill."

*Id*. at 125:7-15.

Further, Zaappaaz's reliance on its "eight years of experience with fulfilling

domestic orders from Asia" is misplaced. ECF No. 108 at 23. Zaappaaz's business

changed post-pandemic in important ways. The eight years of experience was in pre-

pandemic drop-shipment of *promotional items*, not in shipping *PPE* during a

pandemic. Makanojiya Dep. (Aug. 12, 2021) 430:18-431:17, ECF No. 100-42

(testifying that Zaappaaz began selling PPE in March 2020). Therefore, Zaappaaz

was experienced in supplying a completely different product line under different

conditions.

In addition to changing the products supplied, Zaappaaz's customer fulfillment processes also changed radically during this time. Pre-pandemic, Zaappaaz's suppliers in Asia would ship products directly to its customers in the United States. Makanojiya Dep. (Aug. 11, 2021) 94:3-10, ECF No. 100-22. However, this drop-shipping model became unworkable because of pandemic restrictions, forcing Zaappaaz to ship products to its Texas warehouse and then ship them to consumers. *Id*. at 179:11-19. This shipping change caused further delays in filling customers' orders. *See Id*. at 182:1-7.

Finally, the FTC contends that Zaappaaz failed to "maintain records or other documentary proof establishing its use of systems and procedures which assure the shipment of merchandise" creating a "rebuttable presumption" that it lacked a reasonable basis. ECF No. 99 at 19-20 (citing 16 C.F.R. § 435.2(a)(4)). Zaappaaz argues that it had such systems and procedures because it kept an electronic record of an order's "promised delivery date" and tracking number. ECF No. 108 at 24. Regardless of whether such recordkeeping is sufficient, Zaappaaz did not keep complete records. In fact, Zaappaaz lacked tracking numbers for 6.2% of its PPE orders during the relevant timeframe. Miles Decl. ¶ 14, ECF No. 100-99. Zaappaaz also did not have shipment or delivery information for 4.6% of its PPE orders. *Id*. at ¶ 18. Furthermore, Zaappaaz did not produce any documentary evidence supporting

the existence of systems and procedures in response to the FTC's discovery requests. Rottner Decl. ¶ 7, ECF No. 100-73 ("found no instances where the Defendants produced any policy or procedure documents related to systems to ensure the timely shipment of merchandise."). The inadequacy of Zaappaaz's recordkeeping and systems and procedures is reflected in its failure to ship 59.5% of its PPE orders on time. Therefore, the presumption that Zaappaaz lacked a reasonable basis applies.

Considering these facts, Zaappaaz had no reasonable basis to claim that its PPE products would ship within 30 days, let alone same day. The Court finds that Zaappaaz violated 16 C.F.R. § 435.2(a)(1). *Am. Screening*, 2022 WL 2752750, at *5.

### 4. Zaappaaz did not give the refund-or consent option to all necessary customers.

The FTC contends that Zaappaaz violated the Merchandise Rule because it did not provide refunds without demand to customers or obtain their consent when shipments were late. ECF No. 99 at 21. Defendants offer no argument in response.

Where a seller fails to maintain records relating to the refund-or-consent requirement, it creates a rebuttable presumption that the seller failed to comply with the requirement. 16 C.F.R. § 435.2(b)(1). Zaappaaz produced no such Merchandise Rule notices in response to the FTC's document requests. Plaintiff's First Set of Requests for Production ¶ 7, ECF No. 100-16; Rottner Decl. ¶ 8, ECF No. 100-73. Because Zaappaaz produced no records relating to its compliance, it is presumed to

26

have failed to comply with the requirement. *Am. Screening*, 2022 WL 2752750, at *6 (finding rebuttable presumption applied where defendant could "not show that customers were given the required options under 16 C.F.R. § 435.2(b)(1)). Furthermore, Mr. Makanojiya testified that Zaappaaz did not contact individual customers regarding late shipments, and, therefore, Zaappaaz could not have complied with the refund-or-consent requirement. Makanojiya Dep. (Aug. 11, 2021) 177:24-25, ECF No. 108-2 ("It was not possible for us to contact them, correct").

Accordingly, the Court finds that Zaappaaz did not comply with its refund-or-consent requirement in violation of 16 C.F.R. § 435.2(b)(1). *Am. Screening*, 2022 WL 2752750, at *6.

### 5. *Zaappaaz did not deem orders cancelled and provide prompt refunds.*

The FTC also contends that Zaappaaz violated the Merchandise Rule because it failed to cancel orders and provide prompt refunds without prior request as required. ECF No. 99 at 22 (citing 16 C.F.R. § 435.2(c)(5)). Again, Defendants offer no argument in response.

Where a seller fails to maintain records that it cancelled late orders and provided prompt refunds after not complying with the refund-or-consent requirement, the lack of records creates a rebuttable presumption that the seller failed to do so. 16 C.F.R. § 435.2(d). Here, Zaappaaz offers no evidence that it cancelled any late orders and provided refunds without a prior request, thus creating a

rebuttable presumption that it failed to comply with the requirement. Zaappaaz also did not produce any documentary evidence showing that it did so in response to the FTC's document requests. Plaintiff's First Set of Requests for Production ¶ 7, ECF No. 100-16; Rottner Decl. ¶ 9, ECF No. 100-73.

Further, the evidence shows that Zaappaaz refused to provide refunds when customers requested them despite failing to timely ship PPE. *See* Braswell Decl., ECF No. 100-7 (customer denied refund request even though Zaappaaz failed to timely ship items); Russell Decl., ECF No. 100-8 (customer denied refund even though Zaappaaz failed to ship purchase within 24 hours). A seller's failure to provide refunds when requested indicates that it failed to comply with the requirement that late orders be cancelled, and refunds be provided without request. *Am. Screening, LLC*, 2022 WL 2752750, at *6.

The Court finds that Zaappaaz failed to comply with the requirement that late orders be cancelled and refunds be provided promptly. Thus, it violated 16 C.F.R. § 435.2(c)(5).

In sum, the uncontroverted evidence establishes that Zaappaaz violated the Merchandise Rule because it lacked a reasonable basis to believe it would timely ship consumers' PPE orders; it did not comply with the Merchandise Rule's refund-or-consent requirement; and it failed to comply with the requirement that late orders be cancelled and refunds be provided promptly. Therefore, the FTC's motion for

summary judgment should be granted based on Zaappaaz's violations of the Merchandise Rule.

### C. Summary Judgment Should Be Granted With Respect to the Section 5 of the FTC Act Claim.

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices." *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1345 (2021) (citing 15 U.S.C. § 45(a)). The FTC has authority to enforce the Act's prohibitions. *Id*. "To establish a violation of Section 5, the FTC must show that Zaappaaz made material representations likely to mislead consumers acting reasonably under the circumstances in a way that is material." *FTC v. Real Wealth, Inc.*, No. 10-0060-CV-W-FJG, 2011 WL 1930401, at *2 (W.D. Mo. May 17, 2011) (citing *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006)). Both express and implied representations are actionable under Section 5. *Id*. (citing *FTC v. Figgie Int'l*, Inc., 994 F.2d 595, 604 (9th Cir. 1993)).

The FTC argues that Zaappaaz violated Section 5 of the FTC Act because it made the following misleading and material representations to consumers: it (1) would ship goods the same day they were purchased, (2) would deliver goods by guaranteed dates, (3) had multiple items in stock and ready to ship, (4) would refund the full or prorated cost of shipping when orders did not arrive on time, (5) would deliver the goods the consumer ordered, and (6) provided a 100% Money Back Guarantee for its goods. ECF No. 99 at 23. Defendants offer no argument in

response. "Thus, the Court is left to decide: (1) Whether the representations were material; and (2) Whether they were likely to mislead consumers acting reasonably under the circumstances." *Am. Screening, LLC*, 2022 WL 2752750, at *7 (citing *Real Wealth*, 2011 WL 1930401, at *2).

> 1. *Zaappaaz's representations regarding shipping and delivery times were likely to mislead consumers and were material.*

"A representation is likely to mislead a reasonably-acting consumer if it is false or if the advertiser 'lacked a reasonable basis—or adequate substantiation—for asserting that the representation was true.'" *Am. Screening*, 2022 WL 2752750, at *8. It is undisputed that Zaappaaz made representations about PPE during a global pandemic to consumers that it would ship goods the same day they were ordered and that goods would arrive on particular dates. Rottner Decl. Attach. V at 147, ECF No. 100-1; Rottner Decl. Attach. B at 31, ECF No. 100-73. As discussed above, Zaappaaz did not have a reasonable basis to believe that it could timely ship PPE to consumers. Zaappaaz suffered from severe logistical issues that prevented it from shipping PPE to consumers. Makanojiya Dep. (Aug. 11, 2021) 125:7-15, ECF No. 108-2 (logistical challenges caused "shortages of products that you could fulfill."). Moreover, from March to December 2020, over 50,000 PPE orders—59.5% of the total during that timeframe were shipped late. Miles Decl. ¶ 21, ECF No. 100-99.

"Express claims are presumed material, so consumers are not required to question their veracity to be deemed reasonable." *Fed. Trade Comm'n v. OMICS*

*Grp. Inc.*, 302 F. Supp. 3d 1184, 1189 (D. Nev. 2017). Zaappaaz's shipping claims were expressly made to consumers on its websites, in emails, and in advertising. Rottner Decl. Attach. V at 147, ECF No. 100-1; Rottner Decl. Attach. B at 31, ECF No. 100-73. Furthermore, a representation is considered material when it is "likely to affect the consumer's decision to act." *F.T.C. v. Kennedy*, 574 F. Supp. 2d 714, 722 (S.D. Tex. 2008). Claims regarding when a customer will receive a product affect a consumer's decision to purchase that product. *Fed. Trade Comm'n v. Romero*, No. 5:21-CV-343-BJD-PRL, 2023 WL 2445339, at *9 (M.D. Fla. Feb. 27, 2023) (finding shipping representations material). Zaappaaz's representations that product would be shipped the same day, Rottner Decl. Attach. W at 150, ECF No. 100-1, would be delivered within 24 hours, Omnisend Advertisement Information at Sheet1, ECF No. 100-30, and that goods would arrive on particular dates, Rottner Decl. Attach. V at 147, ECF No. 100-1, affect its customers' decision to purchase PPE from Zaappaaz.

The Court finds that Zaappaaz's shipping and delivery representations were misleading and material.

### 2. *Zaappaaz's representations regarding refunding shipping costs for late orders were misleading and material.*

Zaappaaz made representations to consumers that, if they were unsatisfied with its products, they would receive a refund. Rottner Decl. Attach. S at 140, ECF No. 100-1 ("100% satisfaction. If you don't absolutely love it, we'll take it back!");

Russell Decl. Attach. 6 at 29, ECF No. 100-8 (same). Despite these representations, Zaappaaz denied customers refunds. Russell Decl. ¶¶ 21-23, ECF No. 100-8, ECF No. 100-8 (declaration from Zaappaaz customer describing how Zaappaaz refused her cancellation and refund request). Furthermore, when customers sought refunds for faulty PPE, Zaappaaz representatives informed them that PPE was non-returnable and final sale. Guevin Decl. ¶¶ 14-15, ECF No. 100-5. Zaappaaz also promised customers that they would be refunded expedited shipping costs for late PPE but failed to do so. Alimonti Decl. ¶¶ 25-26, ECF No. 100-2; Russell Decl. ¶ 31, ECF No. 100-8. Therefore, Zaappaaz's satisfaction and refund guarantee representations were false and misleading. *Am. Screening*, 2022 WL 2752750, at *8.

These claims were also material because they were express. *OMICS Grp.*, 302 F. Supp. 3d at 1189 (materiality of express claims is presumed). Moreover, representations regarding money-back guarantees are material. *Fed. Trade Comm'n v. Cardiff*, No. EDCV182104DMGPLAX, 2020 WL 6540509, at *15 (C.D. Cal. Oct. 9, 2020) (finding money-back guarantees material).

The Court finds that Zaappaaz's representations regarding refunding shipping costs for late orders were misleading and material.

### 3. *Zaappaaz's representations regarding delivering the goods customers ordered were misleading and material.*

Zaappaaz also represented to consumers that they were purchasing one set of goods and would substitute different goods without notice. Rottner Decl. ¶¶ 34-35,

ECF No. 100-1 (describing how gloves and hand sanitizer received were different than products Zaappaaz advertised). Therefore, Zaappaaz's representations regarding its products were misleading because they were false. *Am. Screening*, 2022 WL 2752750, at *8.

These representations are presumed material because they were express. *OMICS Grp. Inc.*, 302 F. Supp. 3d at 1189. Furthermore, claims are material "when they pertain to the central characteristics of the products or services." *Fed. Trade Comm'n v. SuperTherm Inc.*, No. CV-20-08190-PCT-DWL, 2021 WL 3419035, at *6 (D. Ariz. Aug. 5, 2021). Here, the identity of the product itself is undoubtedly a central characteristic of the product.

The Court finds that Zaappaaz's representations regarding delivering the goods customers ordered were misleading and material.

### D. Mr. Makanojiya Should Be Held Individually Liable For Zaappaaz's Violations of the Merchandise Rule And Section 5 Of The FTC Act.

The FTC also seeks to hold Mr. Makanojiya personally liable for Zaappaaz's violations of the Merchandise Rule and Section 5 of the FTC Act because he controlled Zaappaaz and participated in its unlawful conduct. ECF No. 99 at 20. Mr. Makanojiya provides no response to the FTC's arguments. The Court has already found that Zaappaaz violated the Merchandise Rule and the FTC Act. The Court now finds that Mr. Makanojiya had authority to control Zaappaaz and had knowledge of the wrongful acts and practices and should be held responsible

individually.

"Individuals may be liable under the FTC Act when: (1) The corporate defendant violated the Act; (2) The individual defendants participated in the wrongful acts or practices or had authority to control the corporate defendants; and (3) The individual defendants had some knowledge of the wrongful acts or practices." *Am. Screening*, 2022 WL 2752750, at *8 (citation omitted); *see also United States v. Com. Recovery Sys., Inc.*, 179 F. Supp. 3d 728, 736 (E.D. Tex. 2016).[8]

In *Fed. Trade Comm'n v. Johnson*, the court found that the knowledge requirement was satisfied where the company CEO was both involved in the relevant business area and aware of the company's issues. 156 F. Supp. 3d 1202, 1209 (D. Nev. 2015). The same result is required here. The evidence shows that Mr. Makanojiya had the authority to control Zaappaaz's unlawful activities. It is undisputed that, as he testified, Mr. Makanojiya was the CEO, controlled Zaappaaz, and that all its employees and agents reported to him. Makanojiya Dep. (Aug. 11, 2021) 21:16-21, 25:18-26:1, ECF No. 100-22. Furthermore, Mr. Makanojiya was aware of the severe issues Zaappaaz experienced delivering PPE to its customers.

---

[8] *Fed. Trade Comm'n v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4127292, at *29 (D. Ariz. Sept. 9, 2021), *reconsideration denied*, No. CV-20-00047-PHX-DWL, 2021 WL 4950348 (D. Ariz. Oct. 25, 2021), *and motion to certify appeal denied*, No. CV-20-00047-PHX-DWL, 2021 WL 5138280 (D. Ariz. Nov. 4, 2021), *and motion for relief from judgment denied*, No. CV-20-00047-PHX-DWL, 2022 WL 901386 (D. Ariz. Mar. 28, 2022) (citing *F.T.C. v. Grant Connect, LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014)).

*Id.* at 126:21-129:12 (describing logistical challenges Zaappaaz faced as a "nightmare"). Mr. Makanojiya was not only aware of the logistical issues affecting Zaappaaz's ability to ship PPE, but he was also aware of customers' complaints regarding Zaappaaz's misrepresentations regarding shipping and delivery, refunds, and providing customers the correct items they ordered. *Id.* at 163:15-164:25, 167:4-174:14.

Accordingly, the Court finds that the FTC made a sufficient showing to obtain relief against Mr. Makanojiya individually.

## VI.   MONETARY AND INJUNCTIVE RELIEF.

The FTC seeks both monetary and injunctive relief. Under Section 19 of the FTC Act, when a party "violates any rule under [the FTC Act] respecting unfair or deceptive acts or practices," the Court may grant "such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from [Defendants'] rule violation." 15 U.S.C. § 57b(a), (b). "Such relief may include . . . the refund of money." 15 U.S.C. § 57b(b). Moreover, Section 13(b) of the FTC Act provides that the FTC may obtain permanent injunctions for violations of "any provision of law enforced by the [FTC]." 15 U.S.C. § 53(b).

### A. Summary Judgment Should Be Denied As To The FTC's Claimed Monetary Relief.

The FTC requests monetary relief equal to the net revenue received from late

35

or unshipped PPE orders from March to December 2020. ECF No. 99 at 28 & n.28

("total of all revenue Defendants received from late or unshipped PPE orders from

March to December 2020 minus any refunds or chargebacks issued for those

orders."). In response, Defendants argue that the FTC must prove individualized

consumer harm to recover under Section 19. ECF No. 108 at 26-27.[9] Defendants'

argument that the FTC is required to prove individual reliance is without merit.

Nonetheless, the Court must also consider whether the FTC demonstrated that an

award of gross revenues is necessary to redress consumer injury and concludes that

it did not.

>    1. *The FTC is not required to prove individual reliance to recover
>       monetary relief under Section 19.*

Defendants' assertion that the FTC must prove individual reliance to recover

monetary relief under Section 19 is unsupported. ECF No. 108 at 26. Although the

FTC must establish consumer injury for monetary relief, it need not prove individual

reliance to do so. *QYK Brands*, 2022 WL 1090257, at *7 (citing *Figgie Int'l*, 994

F.2d at 605). "Instead, if the FTC demonstrates that a defendant made material

representations that were widely disseminated, there is a presumption of actual

reliance." *Id.*; *see Fed. Trade Comm'n v. Lucaslaw Ctr. "Incorporated"*, No.

---

[9] Defendants also challenge FTC's ability to recover monetary relief under Section 13 of the FTC Act. ECF No. 101 at 4. However, the FTC is not seeking to recover monetary relief under Section 13. Pl.'s Resp. to Partial MSJ, ECF No. 104 at 2. Accordingly, Defendants motion for partial summary judgment should be denied on this point.

SACV090770DOCANX, 2010 WL 11523900, at *2 (C.D. Cal. June 21, 2010) (observing that misleading claims were widely disseminated if they were routinely made to customers). Here, the FTC has demonstrated that Zaappaaz made widely disseminated misleading claims regarding its PPE to consumers on its website, emails, and advertising. *See e.g.*, Rottner Decl. Attach. V at 147, ECF No. 100-1. Therefore, the FTC is entitled to the presumption of actual reliance. *QYK Brands*, 2022 WL 1090257, at *7 (finding that presumption applied where defendants made "widely disseminated materially misleading claims that they had hand sanitizer in stock and ready to ship").

Defendants have offered no argument or evidence to rebut the presumption of reliance. Moreover, their citations to cases do not support their assertion that individual reliance is required. First, Defendants point to language in an FTC non-monetary settlement agreement noting that calculating damages where consumers received something of value "may be difficult." ECF No. 108 at 26. That statement is of no precedential value. *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 819 F. Supp. 2d 708, 716 n.4 (N.D. Ill. 2010), *order clarified sub nom. Last Atlantis v. AGS Specialist Partners*, No. 04 C 397, 2011 WL 223798 (N.D. Ill. Jan. 21, 2011) (declining to consider administrative settlement). But even if it was, it does not support the proposition that individual reliance must be shown.

Next, Defendants rely on two cases, *FTC v. Zurixx, LLC*, No. 2:19-CV-713-

DAK-DAO, 2021 WL 5179139, at *6 (D. Utah Nov. 8, 2021) and *Noland*, 2021 WL 5493443, at *7, that are distinguishable from this case in critical ways. ECF No. 101 at 9-12. First, *Zurixx* concerned a motion to modify a preliminary injunction and did not find that individual reliance was necessary to award monetary damages. 2021 WL 5179139, at *6. Unlike this case, *Noland* did not involve material misrepresentations giving rise to a presumption of actual reliance.

Therefore, injury has been established.

> ### 2. *The FTC has failed to show that full refunds are necessary to redress consumers' injuries.*

Once consumer injury is established, the FTC Act permits monetary relief "necessary to redress" that injury, including refunds and damages. *See* 15 U.S.C. § 57b(b). Here, the FTC asks the Court to find that the appropriate measure of monetary relief is Zaappaaz's net revenues from the sale of PPE that violated the Merchandise Rule—$37,549,472.14. ECF No. 99 at 28. Recent cases have taken differing approaches on the proper award of damages.

For example, in *Noland*, the court concluded that a net revenue calculation goes "beyond redressing injury to consumers and provides a potential windfall to consumers." 2021 WL 5493443, at *4. It reasoned that "granting a full refund to a satisfied consumer who received a one-day-late shipment would result in a windfall and thus go beyond § 57b(b)'s narrow focus on redressing injury." *Id*.

In contrast, three district courts recently came to the opposite conclusion and

awarded summary judgment for monetary relief equal to net revenues. *Romero*, 2023 WL 2445339, at *7; *Am. Screening*, 2022 WL 2752750, at *10; *QYK Brands*, 2022 WL 1090257, at *8. "The fraud in the selling, not the value of the thing sold, is what entitles customers in this case to full refunds or to refunds for each [product] that is not useful to them." *QYK Brands*, 2022 WL 1090257, at *9 (citing *Figgie Int'l*, 994 F.2d at 606). The *QYK Brands* court explained that net revenues were the appropriate measure of monetary relief because "customers are not owed a refund because they received hand sanitizer that may or may not have been useful to them after Defendants' shipping delays; customers are owed a refund because Defendants' deception induced the sale in the first place." *Id.*

The Court finds the reasoning of the *Noland* court to be more persuasive. Under Section 19, the Court may only grant "such relief as the court finds necessary to redress injury" "resulting from [a defendant's] rule violation." 15 U.S.C. § 57b(a), (b). The FTC has presented no basis for the Court to conclude that a full refund to every customer who received a late shipment is *necessary* to redress the injury. To be sure, some consumers may have had no need for PPE that arrived later than Zaappaaz promised. However, the FTC has not presented any evidence from which the Court can conclude that this was the case for *every* customer who received a late shipment.

Moreover, the FTC's monetary relief theory is not based on facts analogous

to those presented in *Figgie*, upon which *QYK Brands* relies. In *Figgie*, the court determined that full refunds were appropriate because the defendant misrepresented the efficacy of the heat detectors they sold. *Figgie Int'l*, 994 F.2d at 604. These misrepresentations called into question whether the heat detectors were of any value to consumers. In *Am. Screening*, the court adopted the reasoning of *QYK Brands* in reaching its decision. 2022 WL 2752750, at *10-11 ("the Court is persuaded by the court's reasoning in QYK Brands"). The value of the products received is not at issue here. Instead, the misrepresentations concerned *when* consumers would receive their PPE not *what* they would receive. In fact, because the pandemic spanned a three-year period, it is likely that customers still obtained value from the merchandise, even if received later than promised.

The *Romero* decision is also unpersuasive because that court found net revenue to be the appropriate measure of damages based on an Eleventh Circuit decision awarding damages under Section 13(b). 2023 WL 2445339, at *7 (M.D. Fla. Feb. 27, 2023) (citing *F.T.C. v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326-27 (11th Cir. 2013)). Section 13(b) does not have the same necessary to redress limitation applicable to the FTC's claim for monetary relief under Section 19. Moreover, the Supreme Court recently found that Section 13 does not authorize the award of equitable monetary relief so the holding in the case the *Romero* court relied on is no longer good law. *AMG*, 141 S. Ct. at 1352.

The FTC has not established that an award of $37,549,472.14 is necessary to redress the consumer injuries flowing from Defendants' Merchandise Rule violations. This amount is the total revenue Zaappaaz received for the late merchandise. The FTC made no showing as to any lesser amount such as the net profit, the damages for those customers who never received any product or requested but did not receive a refund. Because the Court may not render a punitive award, *Fed. Trade Comm'n v. Simple Health Plans LLC*, 58 F.4th 1322, 1329 (11th Cir. 2023), a showing of a lesser amount than total revenues is required. Similarly, Defendants have not proposed any alternative damages figure that they determine would be necessary to redress consumer injuries. Therefore, summary judgment as to monetary relief for violations of the Merchandise Rule and the FTC Act should be denied because the Court lacks a basis for making such an award.

## B. Permanent Injunctive Relief.

The FTC seeks a permanent injunction to prevent Defendants from advertising or selling "protective goods and services," including products designed or represented to detect, treat, prevent, mitigate, or cure COVID-19 or any other infection or disease. ECF No. 99 at 29. The FTC also seeks to implement various monitoring measures to ensure Defendants' compliance with the permanent injunction. *Id*. at 30.

The FTC is authorized to seek a permanent injunction for violation of "any

provision of law enforced by the" FTC. 15 U.S.C. § 53(b). In deciding whether to issue an injunction based on past violations of the law, the court should consider such non-exclusive factors as

> the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

*United States v. Cornerstone Wealth Corp.*, 549 F. Supp. 2d 811, 816 (N.D. Tex. 2008) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1334 n. 29 (5th Cir. 1978)). The Court will examine these factors as applied to Zaappaaz's actions.

First, Zaappaaz's violations were not isolated. They took place over a period of months and affected 61,594 PPE orders. Miles Decl. ¶ 25, ECF No. 100-99. Second, there was a high degree of scienter involved. Zaappaaz knew that it had significant logistical issues acquiring and shipping PPE but continued to advertise that it could deliver PPE to customers within its advertised timeframes. *Id*. However, the pandemic is now over and there is no apparent danger of repeated violations of misrepresenting PPE delivery times in the future. *Cf. Am. Screening*, 2022 WL 2752750, at *9 ("injunctive relief is still appropriate as the pandemic is ongoing"). In fact, PPE is widely available in stores across the country, including Walmart, Target, Home Depot, Walgreens, and CVS; therefore, consumers do not have to rely

on online sites like Zaappaaz to supply PPE directly from China.[10] Despite the other factors, the end of the pandemic and the lack of future opportunities to sell PPE in violation of the Act, counsels against injunctive relief.

Accordingly, the Court should deny the FTC's request for permanent injunction and its associated compliance-monitoring measures.

## CONCLUSION

Therefore, the Court **RECOMMENDS** that the FTC's Motion for Summary Judgment, ECF No. 99, be granted in part and denied in part, as follows:

1. Summary judgment should be granted in favor of the FTC against Zaappaaz for violations of the Merchandise Rule, 16 C.F.R. § 435, and Section 5 of the FTC Act, 15 U.S.C. § 45.

2. Further, summary judgment should be granted in favor of the FTC against Mr. Makanojiya for violating the Merchandise Rule, 16 C.F.R. § 435 and Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[10] Personal Protective Equipment, Walmart.com, available at https://www.walmart.com/browse/home-improvement/personal-protective-equipment/1072864_1031899_7124246 (last visited June 7, 2023); Wearable Protective Equipment: Daily Living Aids, Target.com, available at https://www.target.com/c/daily-living-aids-home-health-care/wearable-protective-equipment/-/N-4yinjZccxb8 (last visited June 7, 2023); Wearable Protective Equipment: Daily Living Aids, Target.com, available at https://www.target.com/c/daily-living-aids-home-health-care/wearable-protective-equipment/-/N-4yinjZccxb8 (last visited June 7, 2023); Safety Equipment, HomeDepot.com, available at https://www.homedepot.com/b/Safety-Equipment/N-5yc1vZc4ow (last visited June 7, 2023); Gloves and Masks, Walgreens.com, available at https://www.walgreens.com/store/c/gloves-and-masks/ID=361545-tier3 (last visited June 7, 2023); Medical Gloves & Masks, CVS.com, available at https://www.cvs.com/shop/health-medicine/first-aid/sterile-gloves-masks (last visited June 7, 2023).

3.   Summary judgment should be denied as to damages because there are genuine issues of material fact regarding the appropriate amount of monetary relief necessary to redress consumers' injuries, if any.

4.   The FTC's request for permanent injunction and compliance measures preventing Defendants from offering PPE for sale to consumers should be denied because the pandemic is over and thus there is no opportunity for future violations.

The Court **FURTHER RECOMMENDS** that Defendants' motion for partial summary judgment, ECF No. 101, should be denied because material issues of fact exist as to the appropriate amount of damages, if any.

The Court **ORDERS** that Defendants' motion to strike Plaintiff's motion for summary judgment, and Objections to Plaintiff's summary judgment evidence, ECF No. 102, is **DENIED**. Likewise, Court **ORDERS** that Defendants' motion to exclude Ms. Miles's and Mr. Jenkins's declarations, ECF No. 108, is **DENIED**.

The Court further **ORDERS** that Plaintiff's motion to exclude the testimony of Rosemary Coates, ECF No. 112, is **DENIED** as moot.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San***

*Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 9, 2023, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**