UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>ZAAPPAAZ LLC, also d/b/a Wrist-Band.com, WBpromotion.com, CustomLanyard.net, and WB Promotions; and<br><br>AZIM MAKANOJIYA, individually and as an officer of ZAAPPAAZ LLC,<br><br>    Defendants. | Civil Action No. 4:20-cv-02717 |

**DEFENDANTS' RESPONSE TO FEDERAL TRADE COMMISSION'S RULE 56(G) MOTION TO DEEM FACTS ESTABLISHED AND NARROW THE ISSUES FOR TRIAL**

Defendants Zaappaaz LLC and Azim Makanojiya, individually and as an officer of Zaappaaz, LLC, jointly file this as their Response to Federal Trade Commission's Rule 56(G) Motion to Deem Facts Established and Narrow the Issues for Trial and would respectfully show unto the Court the following:

### I.     ADOPTION BY REFERENCE

Defendants adopt by reference the arguments made in their Motion for Summary Judgment (ECF No. 101) and Defendants' Response to Plaintiff's Motion for Summary Judgment, Motion for Leave to Extend Deadline for Response, and Motion to Exclude the Testimony of Rufus Jenkins (ECF No. 108) as additional grounds to deny Plaintiff's Motion.

1

## II.     RULE 56(G) STANDARD

Rule 56(g) provides a procedural mechanism for disposing of undisputed questions of material fact, not questions of law. Rule 56(g) of the Federal Rules of Civil Procedure provides that: "If the court does not grant all relief requested by the [summary judgment] motion, it may enter an order stating any material fact that is not genuinely in dispute, and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Once the Court has applied the summary-judgment standard of Rule 56(a) to each claim and defense identified by the motion, it may also decide to expedite the adjudication by disposing of any undisputed material facts. Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. This decision is discretionary. *See U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 n.15 (5th Cir. 2014). "Even if the court believes that a fact is not genuinely in dispute, it may refrain from ordering that the fact be treated as established." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment. "[I]t is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment.

## III.     ARGUMENTS AND AUTHORITIES

**A.     FTC Failed to Disclose their $12 Million Damages Theory Required by Rule 26(a)**

Rule 26(a) requires a computation of damages claimed by the disclosing party to be provided and supplemented as part of initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). Failure to comply with Rule 26(a) will preclude a party from presenting the nondisclosed evidence unless the failure to comply is substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

To determine if a failure to comply with Rule 26(a) is substantially justified or harmless, the Court considers four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a

continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Res. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Rule 37(c) provides the consequences for a party's failure to comply with Rule 26(a) requirements. In addition to other available sanctions, Rule 37(c) permits federal courts to dismiss a non-complying plaintiff's action. Fed. R. Civ. P. 37(b)(2)(A)(v), (c)(1). Thus, Rule 37 grants federal courts broad discretion in deciding whether to dismiss the action of a plaintiff who fails to comply with disclosure and discovery requirements. *See Moore v. CITGO Ref. & Chems. Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013).

FTC has consistently and exclusively pursued its $37 million damages theory throughout the entirety of this case, which is the only theory that FTC disclosed to Defendants under Fed. R. Civ. P. 26(a).[1] In FTC's Initial Disclosures and supplements thereto, the only damages theory FTC has disclosed is that "FTC has calculated consumer injury to be $37,549,472.14." The only time FTC mentions its $12 million damages theory they are now pursuing is in one sentence in their Statement of Uncontested Material Facts (ECF No. 100). FTC stated. "Defendants' net revenue from undelivered and unrefunded orders was $12,241,035.69." ECF No. 100 at ¶ 483. One alleged "undisputed fact" out of nearly 500 alleged "undisputed fact[s]" made during summary judgment briefing is not sufficient notice to disclose that FTC intended to pursue a $12,241,035.69 damages theory at trial under Rule 26(a).

Allowing FTC to litigate a completely new damages theory without disclosing this theory to Defendants would severely prejudice Defendants. Defendants litigated this entire case, including discovery and summary judgment briefing, based on FTC's $37,549,472.14 damages theory

---

[1] *See* ECF. Nos. 108-11 to 108-14 (Plaintiff's Initial, First Supplemental, Second Supplemental, and Third Supplemental Disclosures).

because it was the only theory FTC disclosed and pursued during the entirety of this case up until FTC filed its Rule 56(g) Motion. Had Defendants known FTC had intended to pursue other damages theories if their $37,549,472.14 damages theory was unsuccessful, Defendants would have fully investigated and requested discovery regarding the additional damages theories. However, instead of disclosing additional damages theories from the onset, FTC waited until less than two months from trial to switch to a new damages theory in a clear attempt to step back from their failed $37,549,472.14 damages theory. The Court should not reward FTC's gamesmanship and should deny FTC's Rule 56(g) Motion regarding their $12,241,035.69 damages theory for alleged undelivered orders. This Court should further prevent FTC from presenting evidence related to this undisclosed theory from trial under Rule 37(c).

**B.    Defendants Previously Contested and Still Contest FTC's Alleged "Undisputed Facts"**

FTC misrepresents to this Court that Defendants failed to contest their "Undisputed Facts" in their Motion for Summary Judgment and Rule 56(g) Motion. Defendants contested FTC's "Undisputed Facts" in their Response to FTC's Motion for Summary Judgment (ECF No. 108) ("Defendants' Response"), adopted herein by reference, and continue to contest FTC's "Undisputed Facts."

In Defendants' Response, Defendants specifically pointed out that FTC never conferred with Defendants regarding the facts they claim to be "undisputed." Rather, Defendants stated they contested these facts and specifically listed their summary judgment evidence regarding liability that conflicts with FTC's "undisputed facts." *See* Defendants' Response (ECF No. 108) at ¶¶ 3-48, 58-64 for a thorough list of all evidence Defendants provided to contest FTC's "undisputed facts" and show the Court that FTC misrepresented the facts.

Defendants further contested FTC's damages theories, calculations, and methodologies in

4

their Response. *See* Defendants' Response (ECF No. 108) at ¶¶ 50-57. Defendants contested Rufus Jenkins' damages calculations because he relied on a spreadsheet created by FTC's data analyst, Elizabeth Anne Miles.[2] This reliance is improper as a lay witness, and FTC failed to designate Mr. Jenkins as an expert witness. Further, at his deposition, Mr. Jenkins had trouble answering the basic question of how he knew whether a given order was delivered or undelivered.[3] He could not even say under oath whether FTC attorneys altered the spreadsheet he relied on.[4] Due to Mr. Jenkins failure to explain his methodology in his declaration or at his deposition, Defendants contested his damages calculations.

Defendants further contested Mr. Jenkins' damages calculations because Mr. Jenkins admitted there is a distinction between net revenue and consumer injury[5], but he did nothing to determine if there was such a difference in this case.[6] He crafted his opinions based on instructions from FTC attorneys.[7] FTC's counsel instructed Mr. Jenkins not to reveal whether he had been given a definition of "consumer injury."[8] Opposing counsel claimed the answer would violate the FTC's work product privilege.[9]

As such, Defendants very clearly contested FTC's "undisputed facts" as to both liability and

---

[2] ECF. No. 108-8 at 57:18-59:5 (Deposition of Rufus Jenkins).

[3] *Id.* at 57:8-59:5.

[4] *Id.* at 59:3-5.

[5] *Id.* at 117:6-9.

[6] *See generally* ECF. No. 108-8.

[7] *See id.* at 24:18-20; 28:11-22.

[8] *Id.* at 42:22 to 43:13.

[9] *Id.* at 43:9-13.

5

FTC's damages theories. FTC is now trying to claim that these facts are undisputed, which is disingenuous. As such, the Court should deny FTC's Rule 56(g) Motion as FTC's "Undisputed Facts" are very clearly disputed, and there is significant evidence refuting these "facts."

**C.     FTC's Damages Calculation of $12,241,035.69 in Undelivered Product is Inaccurate and Unreliable**

Net revenues FTC associates with unrefunded-undelivered PPE orders are unreliable and, therefore, should not be deemed established pursuant to rule 56(g). FTC wrongfully asserts that Defendants received $12,241,035.69 in net revenue from orders that were allegedly undelivered. FTC's computations are unreliable, and FTC has not properly designated Rufus Jenkins or Elizabeth Anne Miles as experts in this case.[10] Instead, the FTC disclosed them as fact witnesses.[11]

Mr. Jenkins determined the damages calculations in this case by utilizing a spreadsheet created by FTC's data analyst, Elizabeth Anne Miles, and copying a segment of data onto Ms. Mile's spreadsheet. Mr. Jenkins failed to explain, in either his declaration or at his deposition, how Ms. Miles created the spreadsheet he used to determine damages. Mr. Jenkins also failed to explain how he altered Ms. Miles' spreadsheet to determine damages. Mr. Jenkins further failed to explain his methodology, not only in creating the spreadsheets but also how he used the spreadsheets to calculate the $12,241,035.69 in net revenue he alleges for alleged undelivered PPE orders. In his deposition, Mr. Jenkins could not even explain how he determined which orders were undelivered or what evidence shows the orders were undelivered.[12]

Despite the lack of evidence, FTC misrepresents to this Court that Defendants received

---

[10]   *See* ECF. Nos. 108-11 to 108-14.

[11]   *See id*.

[12]   ECF. No. 108-8 at 57:8-59:5.

$12,241,035.69 in net revenue from orders that were allegedly undelivered. In his deposition, Mr. Jenkins makes the clear distinction that the $12,241,035.69 calculation is not for products that are "undelivered" but for products that were "not known to have been delivered."[13] There is a vast difference between "undelivered product" and "product not known to have been delivered." FTC's damages theory essentially assumes that any order with a tracking number generated by Zaappaaz with missing delivery data was automatically not delivered. Mr. Makanojiya testified several times that the reason why certain tracking numbers have missing delivery data is that it is common for Zaappaaz to generate shipping labels with tracking numbers that ultimately were not used and another shipping label was created for that order.[14] There are instances where several tracking numbers are created for a single order, yet only one tracking number is ultimately used.[15] Further, Mr. Makanojiya faced data importation issues when he created the spreadsheets FTC relies on for their damages calculations because the data was pulled from multiple sources and some information only FedEx had access to.[16] FTC failed to take these scenarios into consideration when computing their $12,241,035.69 damages calculation.

Because FTC failed to explain their methodology in how they calculated their $12,241,035.69 damages calculation and asserted work product privilege when Defendants attempted to seek this information, Defendants are not able to precisely verify that FTC's calculations were accurate. However, Defendants attempted to use FTC's "comprehensive

---

[13] *Id.* at 53:7-54.16, 57:21-58:22, 68:17-69:15.

[14] ECF. No. 108-3 at 399:22-401:17 (August 12, 2021 Deposition of Azim Makanojiya); ECF. No. 108-4 at 536:22-537:23, 542:25-543:15, 603:4-11 (December 14, 2021 Deposition of Azim Makanojiya); Exhibit 1 at ¶ 7, (Affidavit of Azim Makanojiya).

[15] Exhibit 1 at ¶ 7.

[16] ECF. No. 108-3 at 403:1-23, 405:21-406:20; ECF. No. 108-4 at 511:17-512:8, 544:15-545:23, 546:5-11.

spreadsheet" to filter all orders with an "unknown or not shipped" date1 status to narrow the orders to those that FTC considers "undelivered." Once Defendants were able to filter the orders, they searched Zaappaaz's back-end database to obtain delivery information, such as customer complaints.[17] Personnel for Zaappaaz, Aftab Maredia, reviewed all orders in FTC's "comprehensive spreadsheet" that FTC considers "not known to have been delivered" and was not refunded.[18] Mr. Maredia looked up each of these orders in Zaappaaz's back-end database and confirmed that none of these orders had any customer complaints logged regarding lack of delivery.[19] Thus, Zaappaaz, therefore, believes that these orders were shipped to the customer.[20]

When a customer of Zaappaaz places an order and either does not receive their order or has a complaint about their order, it is Zaappaaz's policy for the customer to email Zaappaaz customer service regarding their complaint.[21] When Zaappaaz's customer services representatives receive a complaint about an order from a customer, it is Zaappaaz's policy for their customer services representatives to log the complaint into the comment section of Zaappaaz's back-end database for a particular order.[22] If there are no comments in the back-end database or refund issued for a particular order, Zaappaaz believes that the order was shipped to the customer.[23] When a customer does not receive an order they placed with Zaappaaz, the customer typically either disputes the

---

[17] Exhibit 1 at ¶ 4.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at ¶ 2.

[22] *Id.*

[23] *Id.*

8

charge for the order with their bank or credit card company or sends a complaint to Zaappaaz customer service.[24] Banks and credit card companies provide customers with the functionality of disputing a charge if the customer does not receive their purchased order.[25] If a customer disputes a charge with Zaappaaz, this information would be located in Zaappaaz's back-end database or in the dispute section of the credit card statements.[26]

Mr. Maredia further confirmed using the information in Zaappaaz's back-end database that at least 307 of the orders FTC considers "not known to have been delivered" were, in fact, delivered to the customer.[27] Mr. Maredia compiled these order numbers into the spreadsheet, attached to Mr. Makanojiya's Affidavit as Exhibit A, in Column B and added delivery information corresponding to each order in Column C.[28] Therefore, at least 307 of the orders used in FTC's damages calculation for orders "not known to have been delivered" were delivered to the customer.[29] Thus, FTC's $12,241,035.69 damages calculation for the alleged undelivered product is not only unreliable but is inaccurate. Clearly, FTC cherry-picked certain information and omitted other information when instructing Mr. Jenkins to calculate the $12,241,035.69 figure. Accordingly, the Court should deny FTC's Rule 56(g) Motion.

**D.     FTC's Rule 56(g) Motion is a Clear Attempt to Re-litigate Already Decided Issues**

FTC is attempting to use their Rule 56(g) Motion to get another bite at the apple after their

---

[24]  *Id.* at ¶ 3.

[25]  *Id.*

[26]  *Id.*

[27]  *Id.* at ¶ 5.

[28]  *Id.*

[29]  *Id.*

unsuccessful attempt to prevail on summary judgment regarding monetary and injunctive relief. The majority of FTC's Rule 56(g) Motion either tries to get the Court to reverse its order denying FTC's Motion for Summary Judgment on monetary and injunctive relief or rule again in FTC's favor regarding their Motion for Summary Judgment on liability. Neither is the proper use of Rule 56(g). The purpose of Rule 56(g) is to dispose of undisputed questions of material fact, not questions of law. FTC misuses Rule 56(g) by attempting to force the Court to rule yet again on disputed questions of material fact and questions of law. Rule 56(g) is not meant to be used in such a way. Further, even in their Rule 56(g) Motion, FTC continues to misrepresent the facts and the Court's Report and Recommendations. Thus, the Court should not allow FTC to re-litigate already decided issues and should deny their Rule 56(g) Motion.

## IV.     CONCLUSION AND PRAYER FOR RELIEF

Wherefore, premises considered, Defendants Zaappaaz LLC and Azim Makanojiya, individually and as an officer of Zaappaaz, LLC, respectfully request that the Court deny Defendants Rule 56(g) Motion and in the alternate limit facts at the time of trial.

Dated: October 3, 2023.

                                        Respectfully submitted,

                                      */s/ Butch Boyd*

                                      Butch Boyd (Lead Attorney)
                                      State Bar No. 00783694
                                      butchboyd@butchboydlawfirm.com
                                      Jillian Scherrer
                                      State Bar No. 24117793
                                      jillianscherrer@butchboydlawfirm.com
                                      2905 Sackett Street
                                      Houston, TX 77098
                                      Phone: (713) 589-8477

Fax: (713) 589-8563
Butch Boyd Law Firm

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I certify that on the 3rd day of October, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, served on users registered to receive electronic notice in the captioned case via transmission of Notices of Electronic Filing generated by CM/ECF, and via email on the counsel listed below.

> Michelle Schaefer
> 600 Pennsylvania Avenue, NW,
> CC-9528 Washington, DC 20580
> (202) 326-3515; mschaefer@ftc.gov
> (202) 326-2485; acollesano@ftc.gov
>
> James E. Elliott,
> Federal Trade Commission Southwest Region
> 1999 Bryan Street, Suite 2150
> Dallas, Texas 75201
> (214) 979-9373; jelliott@ftc.gov
> (214) 979-9350 (main office)
> (214) 953-3079 (fax)

*/s Butch Boyd*
Butch Boyd